# THE PEOPLE *ex rel.* SMITH *v.* THE JUDGE OF THE TWELFTH DISTRICT.

THE Legislature has the constitutional power to pass a special law directing a Court to transfer an indictment for murder pending therein to another district for trial.

The Constitution of this State is not, as in the case of the Federal Government, a grant of power to the Legislature; but from the organization of a State, all its powers not elsewhere invested or expressly interdicted, became lodged in the Legislature.

The Legislature may pass a special law, though it be in derogation of, or in the nature of an exception to the operation of a general statute. The word "uniform," in section two, article one, of the Constitution, which provides that "all laws of a general nature shall have a uniform operation," does not mean "universal;" and that section intends simply that *the effect* of laws of a general nature shall be the same to and upon all persons who stand in the same relation to the law—that is, all *the facts* of whose cases are substantially the same.

The Legislature may deny to one man a privilege extended to another man, without infringing upon the Constitution. The Constitution is violated only when a privilege extended to one is denied to another on substantially *the same facts;* and whether the facts of a particular case constitute a proper exception to the general law, belongs to the Legislature to determine.

The power of the Legislature to pass laws directing Courts to do particular things, and the extent to which the Executive, Legislative, and Judicial Departments of the Government are independent, discussed.

The Legislature, as representative of the State, who is party to the record, may consent to a change of venue in a criminal case, upon the application of the accused.

Cases cited..

Smith *v.* Judge of the Twelfth District.

*Mandamus* is not the proper remedy where a District Court refuses to transfer an indictment for murder pending therein to another District Court for trial—the Legislature having passed a special act directing said Court to transfer said indictment.

APPLICATION to the Supreme Court for a *mandamus* to the Twelfth District Court.

On the seventh of January, 1861, an indictment for murder was found by the grand jury in the Court of Sessions of the city and county of San Francisco against Horace Smith, and duly transferred to the Twelfth District Court, in said city, for trial. January 22d, 1861, Smith was arraigned, and time was given for answer. February 2d, 1861, he plead " not guilty ; " and on the sixteenth of that month made a motion in said Twelfth District Court for a change of venue, based upon the alleged ground of prejudice against him in San Francisco, which would prevent a fair trial. Motion denied. Subsequently, the act of the Legislature, stated in the opinion of this Court, was passed ; and the defendant again moved for a transfer of the indictment to Placer county for trial, in accordance with said act. The District Court refused to obey the law, on the ground that it violated certain articles of our Constitution, to wit: art. 1, sec. 11 ; art. 3, and art. 6, sec. 1. Defendant now applies to the Supreme Court for a *mandamus* compelling the Twelfth District Court to transfer the indictment.

*Hoge & Wilson,* for the Writ.

On the part of the People the following authorities are cited, and relied upon in support of the constitutionality of the act of the Legislature : 3 How. U. S. 534 ; 12 Cal. 271 ; 3 Scammon, 468 ; 16 Pet. 59 to 63 ; 16 Mass. 329–331 ; 15 Penn. 168 ; 9 Id. 466 ; 36 Id. 57 ; 7 Watts, 301 ; 2 Watts & Serg. 271–7 ; 9 Geo. 253 ; 6 English, 284 ; 3 Dallas, 386 ; 12 Wheat. 370 ; 2 Pet. 660 ; 13 How. 48, 429–440 ; 7 Pet. 236 to 239 ; 18 How. 280–1–2–3–4, 430 ; 8 Conn. 547 ; 33 Miss. 92 ; 1 Watts, 330, affirmed in 8 Pet. ; 16 Serg. & R. 169, affirmed in 2 Pet. ; 15 Serg. & R. 72 ; 16 Id. 35 ; 4 U. S. Stat. at large, 506, chap. 72.

Our statutes are full of laws in principle clearly sustaining this

Smith *v.* Judge of the Twelfth District.

act.   The whole subject of remedies is within the entire control of the Legislature.

We simply refer to a few, aimed directly at pending prosecutions : Acts of 1857, 17 ; Acts of 1858, 3 ; Acts of 1857, 97 ; Acts of 1859, 120 ; Acts of 1860, 15–16 ; Acts of 1857, 71 ; Acts of 1860, 31 ; Acts of 1859, 39, 155, 121 ; Acts of 1858, 322 ; Act compelling Justices of the Peace to transfer cases upon mere filing affidavits, etc., without discretion, etc.

These are but a few of the statutes that might be referred to. A similar examination of the Acts of Congress and of the several States would lead to the same result.

That the Court will give an opinion on the merits, although they may not be willing to grant a *mandamus,* we refer to the case of *The Pacific R. Road* v. *The Governor,* 23 Mo. 357, etc. ; *Merced Mining Co.* v. *Fremont,* 7 Cal. 133.

*H. S. Brown, District Attorney, and John V. Wattson,* Contra.

The act in question violates sec. 11 of art. I, article III, and sec. 1, of art. VI of the Constitution of the State.   It destroys the uniformity of the general law and is consequently void.   (*People* v. *Coleman,* 4 Cal. 55 ; *Kelly* v. *T he State,* 6 Ohio, N. S. 269 ; *Gerbrick* v. *The Sta e,* 5 Iowa, 496. 497.)

The power to change the venue in a given case is judicial and not legislative ; because : 1st, universal custom and immemorial usage make it so ; 2d, the Criminal Practice Act, sec. 312–314, make it judicial.   (*Ex parte Knowles,* 5 Cal. 301) ; 3d, the act in question shows upon its face that it is judicial.   (Sedgwick on Const. etc., 55–57, 167–170, 177 ; 1 Blackstone's Com. 268 ; 3 Rhode Island Supplement, 299 ; *Taylor* v. *Pearce,* 4 Rhode Island, 324, 337 ; *Young* v. *State Bank,* 4 Ind. 301 ; *Guy* v. *Hermance,* 5 Cal. 73.)

The Legislature cannot prescribe the mode and manner in which the judiciary shall discharge their official duties.   (*Houston* v. *Williams,* 13 Cal. 24.)   If the duty imposed by this statute is ministerial, and not judicial, it is then void.   (*The People* v. *Nevada,* 6 Cal. 143 ; *Burgoyne* v. *Supervisors,* 5 *Ib.* 9 ; *Dickey* v. *Hurlburt,* 5 *Ib.* 343.)

But let us apply other tests to determine whether the act is judicial or not: 1st, Where an act determines a matter of fact it is judicial. (*Ponder* v. *Graham*, 4 Florida, 35–6, 40, 41, 42; 3 Scammon, 240; Curtis' Commentaries, 95, 96; 2d, the very essence of a law is, that it is to be a rule for future cases. (4 Florida, 35.) 3d, An act which is limited in its operation, and which exhausts itself upon a particular person or his rights, is in its very spirit and terms a judicial proceeding. (9 Gill & Johns. 365; 4 Florida, 35.) 4th, It is error to improperly refuse a change of venue. (*People* v. *Lee*, 5 Cal. 353; *People* v. *Fisher*, 6 Ib. 154.)

Although a State may be a party to a suit, that fact does not give to the Legislature the right to exercise any judicial power over it. (3 Rhode Island, 302; 15 Penn. 18.) 1st, Consent will not confer jurisdiction. (*Muldrow* v. *Norris*, 2 Cal. 74.) 2d, Where both parties consent to a change of venue, the Court is not bound to enter the order—not error to refuse—and certainly mandamus would not lie.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

At the present session of the Legislature an act was passed as follows: "An Act to change the venue in the case of Horace Smith. Preamble:

" *Whereas*, an indictment is now pending in the Twelfth Judicial District Court of this State, charging Horace Smith with the crime of murder, alleged to have been committed by killing Samuel T. Newell, in the city and county of San Francisco, on the first day of January, A. D. 1861 ; and *whereas*, it appears that the accused and the deceased both resided at Auburn, in the county of Placer, at the time of the alleged homicide, and that the principal provocations which led to, and were the immediate cause thereof, and which are relied upon in justification of the alleged killing, were given at Auburn ; and *whereas*, it appears that five-sixths of all the witnesses whose testimony will be required at the trial will be greatly accommodated by a change of the place of trial to Placer county, and that such change is necessary to afford the defendant

a fair and impartial trial; and *whereas*, it appears that existing statutes do not provide for a change of venue for the causes herein specified. Therefore, the People of the State of California, represented in Senate and Assembly, do enact as follows:

" Section 1. It shall be lawful, and it is hereby declared to be the duty of the District Court of this State for the city and county of San Francisco, upon the motion of Horace Smith or his attorneys, after two days' notice to the District Attorney, to grant an order transferring the indictment therein pending against said Smith for murder to the District Court of the Eleventh Judicial District, in and for Placer county, for trial. The transfer shall be made as in other criminal cases, and the said last mentioned Court, upon filing the papers with the Clerk, shall have jurisdiction of said indictment, the trial thereunder, and all other proceedings; provided, all the expenses growing out of the indictment and trial of the said Smith shall be borne by the State of California.

" Sec. 2. This act shall take effect from and after its passage."

After motion made in pursuance of the provisions of this act, the District Court refused to order the change of venue, and the only question raised before us is, whether the statute is constitutional. Its constitutionality is assailed on two grounds: First, that the act opposes section 11 of article I, of the Constitution, which provides that " all laws of a general nature shall have a uniform operation;" and second, that the act is, in character and effect, a judicial sentence or judgment, and therefore is not within the province of the Legislature, but solely within the province of the judicial department.

There is no question at this day of the power of the Courts to pronounce unconstitutional acts invalid, for this power results from the duty of the Courts to give effect to the laws—of which the Constitution is the highest—and which could not be administered at all if nullified at the will or by the acts of the Legislature. But it is equally well settled that this power is not to be exercised in doubtful cases, but that a just deference for the legislative department enjoins upon the Courts the duty to respect its will, unless the act declaring it be clearly inconsistent with the fundamental law, which all members of the several departments of the government are sworn to obey.

It is also unquestionable that the mass of powers of government is vested in the representatives of the people, and that these representatives are no further restrained under our system than by the express language of the instrument imposing the restraint, or by particular provisions which, by clear intendment, have that effect. The Constitution is not, as in the case of the Federal Government, a grant of power to the Legislature, but from the organization of a State of all its powers not elsewhere vested or expressly interdicted, become lodged in the Legislature, which is its general head and representative.

Bearing these propositions in mind, we proceed to examine the questions involved in this record.

To the first proposition, that the act is unconstitutional, because in violation of the eleventh section of article I, which ordains that general laws shall have a uniform effect, the answer is, that this is not a general law. It is a special act, limited in its operation to, and spending its force upon, a given case, and a particular state of facts. It is effectual only for that case, and applies only to those facts. If any illustration can be given of an act that is not general, and if any definition can be given of an act that is special, this act affords fit examples. Indeed, the next objection answers this —for the stress of the argument has been that this was a special provision, which partakes of the nature of a particular order made, and not of a public law enacted. There is no provision in the Constitution which lends countenance to the notion that the Legislature may not enact special laws. Legislatures, unless restrained by express provisions, have from time immemorial exercised the power to pass such acts. This power has never been questioned. To hold the invalidity of such acts would be to abrogate more than half the legislation of the world. The Congress of the United States, possessing a much more limited sphere of authority than the State Legislature, is in the daily habit of passing local and private bills and acts of special legislation. Our own statute books are replete with such legislation. Of such acts are as well laws exempting cities, counties and individuals from the operation of general laws, as acts providing for the conditions peculiar to those to whom the particular acts apply. For example, in San Francisco the acts

relating to the civil practice are peculiar as to the service of process and other matters; as to the validity and effect of the tax laws—validating imperfect, and even void assessments (*Moore* v. *Patch*, 12 Cal. 265) altering the general acts as to fees of officers, and giving salaries instead of fees; and giving a new measure and extent of responsibility for the regulation of municipal offices; and also acts for the disposition of pueblo lands and the adjustment of titles.  So of Sacramento city and county, and the same remark may be made of various other localities.  Many counties have been expressly exempted from the operation of the general laws—for example, in reference to licenses, and to the time of collecting and making returns in respect to taxes, and a multitude of other matters.  The Legislature has in many instances authorized the estates of particular decedents to be sold at private sale (*e. g.* Ritchie's estate, Folsom's estate, and others) under which act many titles and large amounts of property have passed; and it has also authorized sales of ward's estates by guardians; and yet these are cases of exceptional legislative authority, giving to certain persons powers different in mode, degree and effect from those given by general laws applying to other persons in the like category; and not only have similar acts been passed in this State, but also it is believed in every State of the American Union.  The Constitution, so far from interdicting special legislation, impliedly recognizes it, for it has provided that corporations, except municipal, shall not be created by special act—thus impliedly recognizing the power to pass special acts for such purposes (and why not for all other purposes?) but for this prohibition.  The truth is, that such a power is essential to the well ordered government of a State, though it, is probable it might beneficially be limited and guarded.  It is, impossible, in the nature of things, for general laws to be of universally beneficial operation.  Exceptional cases must exist when, from their peculiarities, the operation of a law, just under other conditions, would be of injurious result, and as these peculiar circumstances cannot be foreseen when the general law is passed, the wisdom and justice of the law-giver are invoked to give relief when the proper occasion arises.  Government would be false to the object of its institution if it were unable or unwilling to protect its

36

own citizens from the injurious consequences of its own laws.    It is too clear to need further argument, that this construction of the article of the Constitution in question is indefensible; that the argument is answered by the plain words of the article; that this is not a general law; that the Legislature has the plenary power to pass special laws where special reasons exist, and that this authority as well comprehends the power to pass a special law creating an exception to a general act as the authority to pass any other special law.    If the construction invoked were given, the principle settled would produce universal consternation and disaster, for it is difficult to estimate the confusion of titles which would be wrought by it.

But we are aware that this is not the stress of the objection.    It is not pretended that this is a general law within the meaning of the interdict in question.    But it has been argued, with great force and earnestness, that the provisions of the Criminal Practice Act constitute the law " of a general nature," and this law must be uniform in its operation ; and that this uniformity must be maintained as well against the power of the Legislature to prescribe a law making an exception in any particular case or class of cases, as by denying the application of the law to such cases when the Legislature prescribed no exception.    The construction given to the word " uniform," in this view, is *universal ;* and the proposition in this sense is, that the rules of the Practice Act must apply to all alleged criminals alike, so long as those rules stand.    But this is absurd, for different classes of crimes may and do call for different modes of procedure, and so might different classes of criminals, as Chinamen, etc.    But the error is in a misapprehension of this term *uniform.*    The language must be carefully noted.    It is not that all laws shall be universal or general in their application *to the same subjects,* nor is it even that all " laws of a general nature " shall be universal or general in their application *to such subjects ;* but the expression is, that these laws " of a general nature " shall be " uniform *in their operation* "—that is, that such laws shall bear equally, in their burdens and benefits, upon persons standing in the same category.    But this category depends upon the facts which characterize the offense.    Every defendant is not entitled to the same

privileges, or subject to the same burdens, as every other; for instance, some are entitled to bail, others are not, and this depends upon the particular facts characterizing the imputed crime.   When we speak of uniformity in the operation of a law, we speak of that operation which is equal *under the same facts;* for what justice or uniformity would there be in applying the same rigor of remedy or the same measure of punishment to all conditions of fact or degrees of criminality, merely because there existed a similarity or identity in the general charge ?   *The effect* of laws of a general nature shall be the same to and upon all ; but who are " the all " who are the subjects of this operation ?   Obviously, the answer is, all who stand in the same relations to the law ; all, in other words, the facts of whose cases are in substance the same.   To treat one man differently from another man—to deny one man a privilege extended to another man—is not partiality ; it may be a just discrimination ; to constitute partiality and the invidious discrimination against which the Constitution aims, the denial to another of what is given to one must be made upon substantially the same facts ; or, to express the idea differently, the denial must be *of the same claim* before accorded.   It is clear that this must be the construction of this clause, for otherwise, our whole legislation is in inextricable confu_ sion ; since no exception of classes, or counties, or cities could be be made from the operation of general laws, however much the particular facts locally applicable demanded peculiar rules or an exemption from the operation .of the general law.   It is obvious that an exception of several or many, or by classes or general description, would be as obnoxious to objection, on the score of violating this theory of uniformity, as an exception of a single instance falling within the purview of the general law.   It is the duty, as it is within the province of the Legislature, to prescribe laws which are the guides and rules of action.   These rules are designed to work justice ; to provide for the wants and necessities of the State ; but these wants and necessities may have relation to many cases or a few, or to many persons or a single individual.   It is not a virtue but a necessary defect of legislation, that general rules are enacted, which, while they apply to all cases, and generally with justice, yet apply harshly in exceptional instances.   And

as the Legislature possesses the general power to prescribe these rules, it has the same power, and it may be as much its duty to remedy the particular injurious operation of the law, as to enact the statute from which that effect comes. To determine whether the facts constitute a proper exception to the general act, is the office of the Legislature ; at any rate, we cannot say that the facts recited here do not constitute that exception; nor can we say, or judicially know, that there are any other cases similar to this in the facts ; and, if there are or they shall arise, we are not called upon to decide whether the Legislature is bound to extend the same privilege here granted. We cannot hesitate to hold, that the Legislature may, for causes deemed by it sufficient, pass laws changing, in particular cases, the general law in regard to the place of trial ; for example, if pestilence, inundation, insurrection, or any unforeseen and sudden emergency should arise, and in the like or similar instances ; or where immense expense would attend the trial in the place where the indictment was found ; or where aged and infirm witnesses could not attend a place of trial distant from their residence. Or, suppose the President of the United States a witness for defendant, what would constitutionally prevent the assent of the Legislature that his deposition should be taken ? It is no answer to say that a general law might be passed in these instances ; for the instances are peculiar, and the mere designation of the act as general—the act itself—as in the case in 7th Peters—applying only to a few cases and notoriously passed for the purpose of those cases—does not make it any the less a special act, breaking the uniformity of the general act, than if it were in terms applicable only to the particular cases, or to a particular case.

If we are correct, then, in assuming that the Legislature has a right to pass a special law, though the special law be in derogation of, or in the nature of an exception to the operation of a general statute, the next question is, whether there is anything in this particular act which avoids it. This brings us to the consideration of the second proposition. The Legislature has large powers, but its authority is not unlimited. But as we said before, those who assert a limitation must find it in the Constitution. We are referred to no provision in that instrument which opposes the exercise of this par-

ticular power.   No contract is violated; it is not an *ex post facto* law; it divests no privileges which have been transcribed from Magna Charta into the Constitution.   If the subject be within the scope of the legislative jurisdiction, the mere fact that but one person is affected by the law or one case is included, is no argument against the power; for that would lead to the absurdity of supposing that the legislature had the larger power of affecting all the people by an act, and not the smaller power of affecting only one. It is said that this act is a direct interference with functions essentially and characteristically judicial; that it is a proceeding on the part of the Legislature which subordinates the judiciary to its control, and makes the Judge the instrument of the lawmaker; that it orders a particular entry to be made by the Judge, and that the Legislature determines at once the propriety of making the order, and the fact that it shall be made; that, in short, upon a point affecting the course of the proceeding, and the process and mode of the trial, the Legislature has ordered the proceeding, and assumed the province of the Judge in controlling the litigation, and, it is argued that the Legislature cannot do this without invading the rightful province of the Judiciary.

The general argument which supports this proposition is, that the three departments of the Government, the Legislative, Executive and Judicial, are distinct, separate and independent of each other; and that the assumption of any of the powers appropriate to one is an unconstitutional invasion of the province peculiar to one of the others.   It is necessary to look with some care into this subject, in order to see how far this argument is sustained.   The Constitutional provision on the subject is as follows:   Section one, article three, "The powers of the Government of the State of California shall be divided into three separate departments: the Legislative, the Executive and Judicial; and no person charged with the exercise of power properly belonging to one of these departments shall exercise any functions appertaining to either of the others, except in cases hereinafter expressly directed or permitted."   We had occasion in *McCauley* v. *Brooks*, decided at the July Term, to consider this question, and to define the boundaries of the powers granted to the several departments.   We then said:

" There is nothing in this distribution of powers which places either department above the law, or makes either independent of the other. It simply provides that there shall be separate departments, and it is only in a restricted sense that they are independent of each other. There is no such thing as absolute independence. Where discretion is vested in terms, or necessarily implied from the nature of the duties to be performed, they are independent of each other, but in no other case. Where discretion exists, the power of each is absolute, but there is no discretion where rights have vested under the Constitution, or by existing laws. The Legislature can pass such laws as it may judge expedient, subject only to the prohibitions of the Constitution. If it overstep those limits and attempt to impair the obligation of contracts, or to pass *ex post facto* laws, or grant special acts of incorporation for other than municipal purposes, the Judiciary will set aside the legislation and protect the rights it has assailed. Within certain limits it is independent ; when it passes over those limits, its power for good or ill is gone."

\*    \*    \*    " When we speak," says Story, " of a separation of the three great departments of government, and maintain that separation is indispensable to public liberty, we are to understand this maxim in a limited sense. It is not meant to affirm that they must be kept wholly and entirely separate and distinct, and have no common link in connection or dependence the one upon the other in the slightest degree. The true meaning is, that the whole power of one of these departments shall not be exercised by the same hands which possess the whole power of either of the other departments ; and that such exercise of the whole would subvert the principles of a free constitution."

This extract sufficiently shows that there is no such independence of the several departments as the argument asserts. On the contrary, these departments are mutually dependent, and could not subsist without the aid of each other : the Legislature makes all the laws ; the Executive executes them ; the Judiciary expounds and applies them. It is true that the Legislature cannot do Executive acts ; but it can regulate the executive office, and with certain qualifications which we explained in the case just cited, prescribe laws to the Executive, which that department is bound to

obey.  So the Legislature cannot decide cases, but it can pass laws which furnish the bases of decision, and which laws the Judiciary are bound to obey.  The Legislature cannot dictate to the Courts how they shall decide a particular case, but it can dictate the law to the Judges, and the Judges are bound to decide the given case in pursuance of the law thus dictated.  It can, not only dictate a law for cases generally, but, in the absence of restrictive provisions, it can as well dictate a particular as a general law.

It is said that this act is objectionable, because it directs the Court to make a particular order.  But this is no objection to the constitutionality of the order.  Every law is a command from a superior to an inferior.  A Judge can as well be ordered to do a specific act as a Governor.  If the Legislature directs that the Governor commission a party, as an officer elected by it to an office constituted by its act, the Governor must obey it, as every other citizen is bound to obey the law.  The mere fact that he is Governor does not place him above the law.  So, if the Legislature releases a debt due the State, and directs a Court, in which the suit is pending, to enter satisfaction of record, the Court is bound to make the entry on the production of the act.  It is true that the Court, having a discretion as to a particular matter, cannot, so long as it retains that discretion, be controlled in the exercise of it.  But the whole error is in forgetting that the Court has the discretion only by virtue of the law giving it, and that the same law can take away that discretion as to all matters of remedy, and leave to the Court a simple ministerial duty.  Thus, under the present act, in reference to changes of venue in criminal cases, it is not obligatory upon the Courts to change the venue upon the application or affidavit of the defendant; but the Court must be satisfied that the defendant cannot get a fair trial in the place where indicted.  But this discretion is given, and can be divested by statute; and suppose that the Legislature had declared that upon the mere application of defendants the venue should be changed, no one can doubt that the law would be constitutional, and that the Courts would be bound, on such application, to make the order.  Yet this would be an act destroying all discretion in the Judge, and leaving to him only the simple ministerial duty of making the order.  This is the

case in Ohio, where, on giving bond, the party is entitled as a peremptory right to a new trial; it is the case under our statute, where on its appearing that the land is in a different county from that in which suit is brought, the Court is bound, on motion, to change the venue; it is also the case in the United States statute, where a citizen of a State other than that of the forum is sued in a State Court, on motion, affidavit and bond, the removal of the case to the United States Court is made imperative. It is evident that this obligatory order, depending on these facts, and applying to cases generally, does not less effectually destroy the discretion of the Court, than if they were made to apply to only one case; and it is just as clear that the discretion of the Judge below is no more diminished in this case, under the statute, than the discretion of the Court is taken away in the instances given; or than it would be if the act were general instead of special. To illustrate: the law as it is now, gives the Judge the discretion of granting a continuance; but if. the Legislature declared that no continuance should be granted after the first term, the Court would have no discretion on the subject, and yet we do not see on what principle the law would be unconstitutional.

The confusion which has arisen in this case results from the putting of extreme cases by the counsel. These cases illustrate great wrong and partiality, and the mind, startled by the gross moral outrage which would result from acknowledging the validity of the acts supposed, is prone to believe that it would be beyond the constitutional competency of the Legislature to perpetrate such injustice.

The whole argument then comes to this: that the Legislature has the right to prescribe the remedy in criminal cases; that it has the power to provide for one case no less than for all cases; that it has provided for this case; that in so providing it can as well make a provision which gives discretion to the Court as make a provision that leaves no discretion, but prescribes a mere ministerial function to the Judge, who is as much bound to obey an act that is mandatory and leaves no discretion, as to obey an act which leaves him free to do whatever his judgment dictates. That in this case he has only the discretion to ascertain that the motion is made,

and by the proper party, after the statutory notice, and then the judgment of the law is that the order prescribed shall be made, and he is bound to obey such law.

But another ground might be taken, even if this general view is erroneous. The State is the party prosecuting upon the record. The State is represented by the Legislature, not only in respect to its prosecutions, but its general business, property and litigation. It can order prosecutions, suits and informations, and it can release, discharge and discontinue them. By the act and orders of the Legislature, the District Attorneys appear to prosecute and are paid. These attorneys are but subordinate representatives of the State, but they are controlled by and are responsible to the Legislature, who are the primary and original representatives of the sovereign power. No one doubts that the District Attorney could by stipulation consent to this change of venue ; why not the Legislature—in this respect the superior of the District Attorney ? The State by her Legislature can repeal the law which creates the crime ; can it not consent to a place of trial different from that in which the indictment is found ? The defendant consents, he does not complain. Why may not, then, the highest authority in the State agree with him to this order ?

It is not true that this act is unprecedented. We have been cited to several cases in which the Legislatures of other States— Kentucky, for one, in several instances—have by direct act changed the venue in criminal cases, and no question of the authority made, and yet it is not suggested that any difference in this respect exists between her Constitution and that of California. See also Browning's case, reported in 33 Miss., R. 49, in which the Legislature changed the venue.

There is no force in the argument that this act is in the nature of a judgment of the Courts. The order of removal is not made by the Legislature. It is directed to be made in the given category by the Court. The order is the order of the Court ; the law is the command of the Legislature. So is every law a command from the superior to those subject to his authority, and most acts governing the remedy are specific directions leaving no discretion. There is no such thing as a discretion in the Judge to obey or

refuse to obey the law. Judges are as much bound by the law as those upon whom their judgments bear. It is true that they exercise judgment in giving a construction to the law, and in ascertaining the facts and the subjects to which the law applies; and that this office is their sole province; but this discretion exists in this very case; for however plain the law, and however simple its mandate, still it is left to the Court which is to execute it to determine its meaning, and to decide whether the facts exist by force of which it is to become operative. It is no objection to a law that it is so plain in its provisions, and so mandatory in its requirements, that it leaves nothing of doubt or difficulty to the Judge as to rule or form.

The following cases support the views we have taken: 13 How. 48, 12; 12 Wheat. 660; 7 Peters, 222; 16 Mass. 329; 15 Penn. 168; 9 Ib. 466; 12 Wheat, 370; 1 Watts, 330; 18 How. 280; Ib. 430; 16 Serg. and R. 169; 12 Cal. 271; 8 Conn. 547; and many other cases cited in appellant's brief.

We have said nothing as to the expediency of such laws as this, for it is no part of our province to sit in judgment upon the policy of the constitutional Acts of the Legislature. The Constitution has confided the office of passing laws to that department, and we have as little disposition as power to interfere with legislative functions.

We have listened with proper respect to the appeal which has been made to us to protect the Judiciary from legislative encroachment. With the unquestioned power of construing and pronouncing upon the validity of the laws in the last resort, the danger is not serious that this department will become the victim of injurious aggressions from the other branches of the Government; and we think we have shown no disposition in the past to deny to the Courts the full measure of the powers with which they are constitutionally invested. It may be observed, however, that the protection of the Judiciary from usurpation is not to be sought in forced construction of their own jurisdiction, or in extravagant pretensions to power, but rather in a frank and cheerful concession of the rights of the coördinate departments, and a firm maintenance of the clear authority of our own.

We are of the opinion that the Act in question is constitutional and valid, and this opinion will accordingly be certified to the Judge below.

We have, as a matter of public convenience, considered this case upon the main propositions submitted, though we do not consider the proceeding by mandamus here taken as the proper remedy.

Mandamus denied.

COPE, J.—I concur.  The objection to the constitutionality of the act in question on the ground that it destroys the uniform operation of a general law, strikes at the root of three-fourths of the special legislation of the State.  Our statutes are full of special acts authorizing the estates of deceased persons to be sold in a manner different from that required by the provisions of the general act.  The effect of these acts was to exempt particular estates from the operation of the general law, and so far as this objection is concerned they stand upon the same footing as the act passed in this case.  In addition to these a large number of acts have been passed from time to time, the constitutionality of which may be impeached upon the same ground.  Even the Civil Practice Act does not in all its provisions operate uniformly throughout the State ; and in 1857 an act was passed exempting the city and county of San Francisco from the general law prescribing the mode of drawing jurors.  It is unnecessary to multiply instances in which legislation of this nature has been resorted to.  They are very numerous, and to hold that such legislation is an infraction of the Constitution, would destroy all rights depending upon it, and confuse to a most alarming extent the administration of civil and criminal justice.  I do not propose to add anything to the reasoning of Mr. Justice Baldwin upon the constitutional provision referred to beyond these suggestions, and I assent fully to the conclusion at which he has arrived.  I do not regard the proposition that the act in question involved in its passage the exercise of judicial power, as worthy of much consideration.  Whether the venue could or could not have been changed arbitrarily, there is no doubt the Legislature could consent to a change upon the application of the accused, and beyond that nothing was done but to require the Court to give effect to that con-

sent.   If this was exercising judicial power, it is because the act was imperative in its terms and left no discretion in the Court, and it is evident that this is not a sufficient test.   In administering remedies, the Courts are bound to give effect to the rules prescribed by the Legislature, and it would be a novel procedure to refuse obedience to such rules on the ground that they are mandatory and imperative.

FIELD, C. J.—I concur in the judgment, and in the conclusion that the act in question is constitutional.