STATE OF KANAS *ex. rel.* ALFRED JOHNSON *vs.* ALFRED HITCHCOCK, *respondent.*

## Motion for writ of Mandamus.

An act is not invalid by reason of its having been approved on a day after the act of congress, admitting Kansas into the union. The decision in case of *The State ex. rel. Hunt vs. Meadows,* to this effect, confirmed.

Section seventeen, article two, of the constitution, providing that " in all cases where a general law can be made applicable, no special law shall be enacted," leaves a discretion to the legislature, recognizes the necessity of some special legislation, and seeks only to limit, not to prohibit it. The legislature must determine whether their purpose can or cannot be expediently accomplished by a general law.

Act of January 30th, 1861, to provide for the location of the county seat of Franklin county, *held* not to conflict with section seventeen, article two, of the constitution, and not invalid for having originated in the territorial council.

The reasoning in *Thomas vs. Board of Commissioners,* (5 Ind. R., 4,) referred to and disapproved.

All officers of the old government, on the admission of the state, by virtue of the schedule to the constitution, became, *ad interim,* state officers. They could do no act prohibited by the constitution, to regular state officers of like functions, but were not obliged to follow the same mode of procedure.

The territorial legislature is no exception to this rule, and the laws passed by that body, until superceded, according to the mode prescribed by law, if their provisions were not in conflict with the constitution of the United States, nor of the state, were valid.

The organic act required no record to be kept of the presentation of a bill to the governor for approval.

*D. M. Valentine,* for relator.

I. The act which corresponds with council bill number thirty-nine of the session of the legislature of 1861, originated in the council, and not in the house, as the constitution requires. (*See State Const.,* § 12, *Art.* 2; *Enrolled Bill and Council Journal,* 133.)

II. The bill was never *presented* to the governor within the meaning of the constitution and of the organic act. (*See*

*Const.,* § 14, *Art.* 2; *Organic Act,* § 24.) I refer to journal rules of that session of the legislature, (§§ 13 *and* 14,) and all the reports of the committee on enrolled bills, and particularly the reports of the committee for the council, after the passage of the act by the house. (*Council Journal,* 241, 280, 290.)

III. The act was never signed or approved by the governor after it passed the legislature, and is therefore not a law. (*See Organic Act,* § 24; *State Const.,* §§ 12, 13, 14; *Art.* 2.)

1. Because it passed the legislature January 31st, 1861, and not before. (*See Journal of both Houses and the Proceedings of that day; House Journal,* 424, 425, 429; *Council Journal,* 252.)

2. It was never *enrolled* or presented to the governor for his approval after January 31st, 1861, and consequently he could not have approved it after that time. (*Refer to Journals of both Houses, and particularly, Reports of Committee on Enrolled Bills; see Council Journal,* 241, 262, 280, 290, *and also Joint Rules of that Session,* §§ 13, 14.)

3. The governor never approved the bill after January 30th, 1861. (*Laws* 1860, *p.* 15; *Enrolled Bill; Gov. Message to both Houses, after Jan.* 30th; *Council Journal,* 270, 282, 286, 304, 310; *House Journal,* 424, 438, 460, 475, 487, 491.)

IV. The act is a special act, and is therefore unconstitutional and void, as a general law could easily have been made applicable. (*See State Const.* § 17, *Art.* 2; *Thomas vs. The Board of Commissioners, &c.,* 5 *Ind.* 4.)

That the printed laws or the original enrolled bills are not conclusive evidence of what is the law, and that we can go behind the printed laws or enrolled bills and show by the journals of the houses, or other evidence, when a law passed, how it passed, or that it never passed. (*See* 1 *Greenleaf Ev.,* 491; *Root vs. King,* 7 *Cowen,* 636; *The People vs. Purdy,* 2

*Hill* 31; *same,* 4 *Hill* 384; *Debow vs. The People,* 1 *Denio* 9; *Commercial Bank of Buffalo vs. Sparrow,* 2 *Denio* 97; *Corning vs. Greene,* 23 *Barbor* 33; *Spangler vs. Jacoby,* 14 *Ill.* 291; *Prescott vs. the Ill. & Mich. Canal,* 19 *Ill.* 324; *Fowler vs. Pierce,* 2 *Cal.* 165.)

*Wilson Shannon,* for respondent.

Several objections are made to the validity of the act entitled " an act to provide for the location of the county seat of Franklin county," approved 30th January, 1861. (*Stat., p.* 14.) The constitution of Kansas was approved January 29th, 1861. (*Stat.* 1861, *p.* 75.)

It is claimed—

I. The bill in question originated in the senate, in contravention of the twelfth section of the second article of the constitution of Kansas. This section provides that all bills shall originate in the house of representatives, and be subject to amendment or rejection by the senate.

By the clear and obvious intent of the constitution, this language only applies to a legislature elected under the constitution, and not to a territorial legislature elected under the organic act, and continued in office by the third section of the schedule. (*Laws of* 1861, *p.* 67.)

In the case of *The State of Kansas ex. rel. F. G. Hunt vs. Calvin Meadows,* decided at the last term, the court decided that the territorial legislature were continued in office by the third section of the schedule, until they were superceded, under the authority of the constitution, and that the act passed by the territorial legislature, entitled " an act defining the southern boundary of Breckinridge county, and for other purposes," passed January 31st, 1861, was valid and binding. In that case, the court say, that " by the twenty-third section of the schedule of the constitution, the governor elect, under the constitution, was required, upon receiving official information of the admission of Kansas into the union, to proclaim

State of Kansas *ex. rel*. Johnson *v.* Hitchcock.

the same, and convene the legislature elected under it.   This proclamation was issued the 9th day of February, 1861. The state legislature could not be considered as superceding the officers of the territorial legislature, before issuing the proclamation of the governor convening them.''

The territorial legislature is, therefore, left in office to legislate in the  same mode and manner as before the adoption of the constitution, until superceded.   It surely was not contemplated 'that the various provisions of the constitution should at once be applicable to the territorial legislature.   So far, at least, as they refer to the mode and manner of legislation under the territorial organization, a bill could originate in either branch of the legislature.   The words " house of representatives,'' and the word "senate,'' as used in the constitution, obviously applies to the house of representatives and the senate mentioned in and constituted by the constitution. If this view is correct, it 'is an answer to all the objections to the law in question, on  the ground that in its passage the provisions of the constitution were not complied with.

II.  It is claimed  that this law  was  not presented to the governor, within the meaning of  the twenty-fourth section of the organic act.

The fact that the governor  approved and  signed it is conclusive evidence that it was presented to  him,  and no other evidence can or should be required.

III.  It is claimed that the law  in question is a special law, and therefore unconstitutional.   The constitution has no application.   Should the court think otherwise, and hold that the territorial legislature were  bound by the constitution, so far as the subject matter of legislation is concerned, still there is nothing in the constitution which prohibits the legislature, either state or territorial, from passing a law, such as the one in question.   And both the  state  legislatures that have been elected, under the constitution, have passed just such laws as the one in question.

At the last session of the legislature, they passed a law in relation to fixing the permanent county seat of Chase county, which seems to have been copied from the Osage county law. This is a legislative construction of the constitution, which should not be disregarded by the court, and is, at least, entitled to respect. The section of the constitution relied on, is the seventeenth section, article second. It provides, among other things, that "in all cases where a general law can be made applicable, no special law shall be enacted." We cannot conceive of a case where a special law would be more appropriate, than in fixing a disputed county seat, by referring the question to the people of the county. A general law could not be made applicable, where two or more towns in a county were contending for the county seat; and for aught that we know, Franklin was the only county in the state, where there was a contested county seat. It would be absurd to pass a general law, applicable to all the counties in the state, to make Franklin county to settle, by vote, her county seat question. Under a general law, applicable to all the counties in the state, a continual agitation of the county seat question might be expected in every county in the state. Such a law should be entitled " an act to disturb the peace." The legislature are the proper, and only, judges of the question, when a special law should be passed; and having passed on this question, the court will not be inclined to disturb that that decision.

IV. That the law was not approved, after its passage. It appears to have been approved by the governor on the 30th of January, 1861, and it is claimed that the journals show it was not passed until the 31st of January, 1861. The joint rules of the house and council, under the territorial organization, provided that the laws should be signed by the presiding officer of each house, and the organic act, section twenty-four, provides that every bill that shall have passed the council and house of representatives, shall, before it should become a

law, be presented to the governor, &c. If he approves, he shall sign, &c. Now this law is signed, in due form, by all the officers required to sign it by the joint rules and by the organic act. Can this court go behind all this and inquire into the manner in which the bill was passed? (23 *Mo. R.*, 353.)

I think, clearly not. It would open a door that would lead to great difficulties and inconveniences, and the very object in requiring the signatures of the officers to all laws passed, would be rendered almost entirely nugatory. But if the court should go behind the official signatures to the bill, what would be the result in this case? It is claimed that the journals show the law was passed on the 31st of January, and it was approved 30th of January—one day after it was passed, according to these dates. But what would all that prove? Nothing more than that there was a mistake in one or the other date—that the date of the journals was wrong, or the date of the approval of the governor was wrong. That is all that would, or could, be shown by going behind the official signatures to the bill. It surely will not be claimed that a mere mistake in one of these dates would render the law invalid. Where there is a discrepancy between the date in the journals and the date of approval by the governor, how can this court determine which is right or which is wrong? The discrepancy does not prove that the date of the journal is right, and that of the approval wrong, and there is no other evidence in the case but the difference in the dates. But admitting that one or the other is wrong, the law is not therefore invalid. It is probable that the mistake in this case is in the governor, and that in the hurry and confusion of the adjournment on the 31st, he put the wrong date to his approval; but be this as it may, the law, it is admitted, did pass both houses, and it is admitted it was signed by the presiding officer of each house, in accordance with the joint rules, and it was approved by the governor. It has, therefore, all the requisites of a law,

legally passed, and the court will not, and ought not, to set aside a law, merely because some one has made a mistake, either in the day it passed, or in the day it was approved.

By the Court, EWING, C. J.   The writ will not be issued unless the "act to provide for the location of the county seat of Franklin county," which purports to have been approved on the 30th of January, 1861, and is published among the laws of the territorial legislature of that year, be invalid.

That the act is not invalid by reason of its having been approved on a day after the act of congress admitting Kansas into the union, was, in effect, decided by this court in the case of *The State of Kansas ex. rel. F. G. Hunt vs. Calvin Meadows*, to which decision we adhere.

Nor is it invalid as in conflict with section seventeen, article second, of the state constitution, which provides that, "in all cases where a general law can be made applicable, no special law shall be enacted."

We understand this section of the constitution as leaving a discretion to the legislature, for it would be difficult to imagine a legislative purpose which *could not* be accomplished under a general law.   If it be possible, as we think it is, to frame a general law under which the purpose of any special law could be accomplished, then that provision of the constitution if literally construed, would absolutely prohibit all special legislation.   Such is not its purpose.   It recognizes the necessity of some special legislation, and seeks only to limit, not prohibit it.

There are many special acts to be done, undone, prevented, or omitted, in which the legislature could not give effect to their will through a general law without accomplishing more evil than good.   For instance, there might be strong reasons, arising from change of county lines or other causes for the passage of a law, such as the one in question, authorizing an election in a particular county to change the county seat, and yet there might be no circumstances existing or likely to arise

in any other than that one county, making such election expedient. Such a general law *could* "be made applicable" to the election in the county where it was necessary and expedient, but such law would bring on distracting contests in many other counties, and make the general effect of the law highly injurious. It is not the purpose of the constitution to compel the legislature to accomplish an act of local or special legislation beneficial to one person or locality only, through a general law, which might, in their opinion, result in damage, when applied to other persons or localities. The legislature must judge and determine whether the object in view can be accomplished under a general law without public injury, and, if it can be, they are not at liberty to seek it by enacting a special law. But if it can not, without such public injury, then they may resort to special legislation. Any other interpretation of their duties would, in effect, prohibit special legislation, and compel the legislature to accomplish a special purpose under a general law, oftentimes to the injury of the public, thus sacrificing the spirit to the letter of the constitution.

The legislature must necessarily determine whether their purpose can or can not be expediently accomplished by a general law. Their discretion and sense of duty are the chief, if not the only, securities of the public for an intelligent compliance with that provision of the constitution. Whether we could, in any conceivable case, presenting a flagrant abuse of that discretion, hold a private law invalid as contrary to that provision of the constitution, we need not here decide, but we would certainly not hold such a law invalid merely because it would, in our opinion, have been possible to frame a general law under which the same purpose could have been accomplished.

The case of *Thomas vs. Board of Commissioners, &c.*, (5 *Ind.* 4,) considering it, as did the supreme court of Indiana, as involving only a construction of section twenty-third of the

constitution of that state, presents a case very similar as to law and fact, and quite as strong for this relator, as the one at bar. We are not convinced by the reasoning, nor satisfied with the conclusion of that authority, which is the only one cited on either side upon the question.

Nor is this law invalid, because it originated in the council of the territorial legislature.

The schedule to the constitution provided that all officers under the territorial government should continue in the exercise of the duties of their respective departments until superseded under the authority of the constitution. All officers of the old government, on the admission of the state, became, *ad interim*, state officers. They could do no act prohibited by the constitution to regular state officers of like functions, but were not obliged to follow the mode of procedure in the transaction of public business prescribed for the regular officers of the state government. The machinery of the various branches of the territorial government was, in many respects, different from that arranged in the constitution for conducting public business, and could not have been changed on the admission of the state without a suspension and derangement of public business, to prevent which was a chief purpose of the schedule. The territorial legislature being in session when the act of admission was passed, had the power to continue in the discharge of the duties of that department until superseded, according to the mode of procedure prescribed in the organic act, or the laws of the territory, and the laws so passed, if their *provisions* were not in conflict with the constitution of the United States or of the state, were valid.

It is alleged, in the motion for the writ, that the law in question, which, as published and as enrolled appears to have been approved by the governor on the 30th of January, was, in fact, not passed by the legislature until the 31st of that month. And, while the genuineness of the signature of the governor is not questioned, an attempt is made to show that

State of Kansas *ex. rel.* Johnson *v.* Hitchcock.

the signature was not affixed to the bill before the adjournment, by a production of the journals of both houses, which, it is alleged, contain no evidence of the presentation of the bill, or of notice from the governor of its approval.

Without considering whether any evidence whatever would be admissable to impeach a law enrolled and attested by the genuine signatures of the proper officers, we need only say that no facts are alleged in this case, which, if apparent on the face of the law itself, would at all affect its validity. The organic act required no record to be kept of the presentation of a bill to the governor for approval, and if it did, the fact that such directory provision as to a formal step was not complied with, could not affect the validity of the law. So, where the governor approved a bill, there was no requirement that he should notify either house of the fact; or that such notification, if made, should be entered on the journals. And admitting the fact, and receiving it as evidence that the law was passed a day before it purports to have been signed, the utmost effect of the evidence would be to establish an error in the date of the governor's approval, and leave the approval as if it had not been dated. In such case, as the date is no necessary part of the approval, and as the presumption is in favor of the regularity of official acts, the law would be treated as having been signed between the date of its passage and the final adjournment of the legislature on the 2d of February.

The motion is overruled.