WILLIAM RAMBO v. JOE LARRABEE *et al.*

No. 13,554. (73 Pac. 915.)

SYLLABUS BY THE COURT.

1. CONSTITUTIONAL LAW — *Laws of a General Nature.* The first clause of section 17, article 2, of the constitution, which is, "All laws of a general nature shall have a uniform operation throughout the state," is mandatory upon the legislature.

2. —————— *Uniform Operation of General Law.* A law of a general nature which does not have uniform operation throughout the state is unconstitutional and void.

3. —————— *When Either a General or a Special Law May be Enacted.* If the object to be accomplished by a law is in its nature special, either a general or a special law may be enacted, as the legislature may decide.

4. —————— *Whether General or Special, a Question for the Courts.* Whether a law is general or special in its nature is a question for the courts, and not for the legislature.

5. —————— *General Law Defined — Class Legislation.* An act, to have a uniform operation throughout the state, need not affect every individual, every class, or every community alike. It is competent for the legislature to classify and adapt a law general in its nature to a class, but such classification must be a natural and not an arbitrary or fictitious one, and the operation of such general law must be as general throughout the state as are the *genera* therein provided for.

6. —————— *Criminal Appeals—Act of 1903 Void.* Chapter 390, Laws of 1903, entitled "An act concerning criminal appeals in counties containing more than 65,000 inhabitants, in certain cases," is general in its nature, and as it does not have a uniform operation throughout the state it is unconstitutional and void.

Original proceeding in mandamus. First opinion filed April 21, 1903. Rehearing granted. Second opinion filed October 10, 1903. Writ denied.

*J. K. Cubbison*, for plaintiff.

*James S. Gibson*, county attorney, and *B. S. Smith*, for defendants.

The opinion of the court was delivered by

CUNNINGHAM, J. : By chapter 390, Laws of 1903, entitled "An act concerning criminal appeals in counties containing more than 65,000 inhabitants, in certain cases," it is provided that any person who has been, or who shall hereafter be, convicted of murder or manslaughter in any county containing more than 65,000 inhabitants, who files with the clerk of the court in which said person was convicted his affidavit setting forth that he believes that he has a just cause for appeal, and that by reason of his poverty he is unable to pay the stenographer for a transcript of the testimony and record, and who satisfies the judge of the court that he is unable to pay for said transcript and record, shall be entitled to have such record prepared without any expense to himself and the costs thereof shall be assessed to the county. Prior to the passage of this act plaintiff herein was convicted of murder in the second degree in the court of common pleas of Wyandotte county, and after its passage applied to the defendant, the stenographer of that court, for a transcript of the testimony and record, making a showing of his inability to pay for the same, as provided for in the act. The stenographer, doubtful of the constitutionality of the act, refused to comply with the request, and thereupon this action in mandamus was brought in this court.

Upon its first submission, the only question raised was that indicated in the *per curiam* opinion reported in 72 Pac. 225. Thereafter, upon its request, the county of Wyandotte was made a party, as being the real party in interest, and a rehearing of the questions involved was granted. Counsel for the county now urge the invalidity of this act for the reason that it is special, class and partial legislation, and as such condemned by the spirit of the bill of rights and the terms of the constitution.

With the development of the idea of self-government, there came its necessary corollary, equal rights under the law. This corollary had a comparatively slow development and recognition, and it was the almost universal custom in the earlier legislative history of the states to carve out from the body of citizenship special individuals or classes and to grant to them, by the enactment of special laws, privileges or immunities which should have been, in all justice, accorded by general law to all those of the class to which the favored ones belonged. To meet this evil, there came to be engrafted into the later constitutions of nearly all of the states provisions directed in varying terms against it. In our own constitution these issues were met and principles concreted in section 17 of article 2, which reads as follows:

"All laws of a general nature shall have a uniform operation throughout the state; and in all cases where a general law can be made applicable, no special law shall be enacted."

The exact duplicate of this provision is not found in the constitution of any other state in the Union. In the convention which framed our constitution the committee upon which was imposed the duty of formulating the article upon "legislative department"

reported this article in the following words : "In all cases where a general law can be made applicable, no special law shall be enacted." This form is the one more generally adopted in the older states, but is much less comprehensive than the one in which it was finally cast. Clearly the words of this provision are mandatory in form. "All laws of a general nature *shall* have a uniform operation throughout the state." In view of the evils which were designed to be remedied by embodying such provision in the constitution, it cannot be held that these mandatory forms of expression were simply directory, for to permit the legislature to go on bestowing special privileges upon individuals or classes where equal rights only should be conferred, which would be the result if the constitution left the legislature to determine when laws were general and when special in their nature, would not be in any degree to limit the evil sought to be remedied. In Ohio, where the constitutional provision was, "All laws of a general nature shall have a uniform operation throughout the state," the supreme court, in *Kelley v. The State of Ohio*, 6 Ohio St. 269, held it to be

"a general unqualified and positive prohibition or limitation of legislative power, forbidding the giving of a partial operation to any law of a general nature— or in its own affirmative terms, requiring that a uniform operation throughout the state shall be given to all laws of a general nature."

This announcement of the mandatory character of this constitutional provision has been followed in *The State v. Powers*, 38 Ohio St. 54, 63 ; *Falk, Exp.*, 42 id. 638 ; *State, ex rel., v. Ellet et al.*, 47 id. 90, 23 N. E. 931, 21 Am. St. Rep. 772 ; *The State, ex rel., v. Bargus*, 53 id. 94, 41 N. E. 245, 53 Am. St. Rep. 628.

In Sutherland on Statutory Construction, section 117, the same doctrine is stated, and it is recognized

in all states, so far as we have been able to ascertain. Indeed, we are at a loss to know how these provisions could be construed otherwise, considering their form and the purpose for which they were put into the constitution. It cannot be said that the constitution makers thought that by this direct mandatory statement they were simply giving advice to the legislature, trusting to its own judgment as to whether the things therein apparently commanded should be observed or otherwise.

We are brought then to a consideration of the correct meaning of this provision taken as a whole. In this we have no definite help from the decisions of courts of other states, for, as we have suggested, no like provision is elsewhere found. The section contains two clauses. The first is, "All laws of a general nature shall have a uniform operation throughout the state"; that is, all laws which in their nature are general shall have such operation. Illustration cannot add to the clearness of this language. If the subject which the legislature desires to deal with by the enactment of a law is general in its character, then the mandate comes to it that the operation of the law which deals with such subject shall be uniform throughout the state. But all laws which the legislature would be required to enact would not be of a general nature. Peculiar local conditions would call for the enactment of special laws to meet these conditions; hence the second clause of this section, "and in all cases where a general law can be made applicable, no special law shall be enacted"; that is, in providing for special cases, it is the duty of the legislature to make such provision by general law so far as it is possible so to do, but in cases where a general law is not found to be applicable, a special law may be en-

acted. The question whether in providing for special cases a general or a special law is best adapted is one for the legislature. This, and this only, is the discretion confided to it. If the nature of the law is general, which is a question for the courts, the law in its form and operation must be general. If the nature of the law is special, its form and operation may be either general or special, as the legislature may decide. This interpretation we think to be clearly required by all of the terms of this section. While it may not be in conformity with some assumptions in a few cases decided by this court, we think it not against any, and that it it consonant with most of them.

This section was first considered in *State of Kansas, ex rel. Johnson, v. Hitchcock*, 1 Kan. 178, 81 Am. Dec. 503. In that case the question under advisement was whether an act providing for an election to locate the county-seat in Franklin county was obnoxious to its provisions. It was assumed all the way through the opinion that the nature of the act was special, and the only question before the court, apparently, was as to where the discretion was lodged to determine whether the matters involved could have been met by a general rather than a special law, and upon that point the court said (pages 184 and 185):

"We understand this section of the constitution as leaving a discretion to the legislature; for it would be difficult to imagine a legislative purpose (*i. e.*, such as was under consideration) which *could not* be accomplished under a general law. If it be possible, as we think it is, to frame a general law under which the purpose of any special law could be accomplished, then that provision of the constitution, if literally construed, would absolutely prohibit all special legislation. Such is not its purpose. It recognizes the necessity of some special legislation and seeks only to limit, not to prohibit it."

"There are many special acts to be done, undone, prevented, or omitted, in which the legislature could not give effect to their will through a general law without accomplishing more evil than good. . . . It is not the purpose of the constitution to compel the legislature to accomplish an act of local or special legislation, beneficial to one person or locality only, through a general law, which might, in their opinion, result in damage when applied to other persons or localities. The legislature must judge and determine whether the object in view can be accomplished under a general law without public injury, and if it can be, they are not at liberty to seek it by enacting a special law. But if it cannot, without such public injury, then they may resort to special legislation. Any other interpretation of their duties would, in effect, prohibit special legislation, and compel the legislature to accomplish a special purpose under a general law, oftentimes to the injury of the public, thus sacrificing the spirit to the letter of the constitution."

The matter under consideration in that case was one arising under the second clause of the section, and it is clear that what the court decided was that in such a case the legislature might determine whether the purpose could be best accomplished by a general or a special law, and not that the legislature possessed the right to determine whether a matter to be legislated upon was of a general or special nature. This was a question entirely foreign to that under consideration.

In *Beach v. Leahy, Treasurer,* 11 Kan. 23, following *State of Kansas, ex rel. Johnson, v. Hitchcock,* supra, it was held that an act authorizing a school district to issue bonds for the purpose of building a schoolhouse was not invalid under the terms of section 17. The discussion there proceeded upon the assumption that the nature of the law was special, and, as such, it

Rambo v. Larrabee.

might be accomplished by the passage of a general or special law, at the discretion of the legislature.

In *Comm'rs of Norton Co. v. Shoemaker*, 27 Kan. 77, an act regulating the salaries of certain county officers was under consideration, and the same was held valid for the reason that there might have been special reasons for regulating the salaries in the enumerated cases and that—

"The legislature, under the constitution, has discretion to determine the necessity for such special laws, and such statute is analogous to those conferring authority by special acts upon counties, townships and school districts to issue bonds.

In *City of Wichita v. Burleigh*, 36 Kan. 34, 12 Pac. 332, an act to vacate streets and alleys in the city of Wichita, which was clearly a local matter, was under consideration, and the court in its syllabus there said :

"The legislature may pass a special act where a general law cannot be made applicable, and this although the special act may to some extent affect the uniform operation throughout the state of other laws ; and generally, it is a question for the legislature to determine whether a general law can be made applicable or not."

Of course, this language must be construed in the light of the subject under consideration.   In *Comm'rs of Barber County v. Smith*, 48 Kan. 331, 29 Pac. 565, the validity of a law authorizing the commissioners to purchase bridges in that county was assailed.   The court sustained the law, saying :

"It is doubtful whether such a condition, with reference to bridges, exists in any other county in the state   .   .   .   Hence, this is one of the cases in which the legislature must determine whether their purpose can or cannot be accomplished by a general law."

The law under discussion in *Elevator Co. v. Stewart*,

41—67 KAN.

50 Kan. 378, 32 Pac. 33, was held to be constitutional, as it was neither a general law nor a law of a general nature, relating as it did to taxes in certain enumerated counties alone. In *The State, ex rel., v. Lewelling*, 51 Kan. 562, 33 Pac. 425, the court, referring to and approving the case of *State of Kansas, ex rel. Johnson, v. Hitchcock*, supra, said, with reference to section 17, that it

"leaves a discretion to the legislature, recognizes the necessity of some special legislation, and seeks only to limit, not to prohibit it. The legislature must determine whether their purpose can or cannot be expediently accomplished by a general law."

And further, speaking of the law there being considered, which was one defining the boundaries of a certain county, the court said:

"It is very difficult to see how the legislature could have provided for the government of this territory otherwise than by a special act, or how the boundaries of any county can ever be fixed otherwise than by special legislation."

In *Eichholtz v. Martin*, 53 Kan. 486, 36 Pac. 1064, the law providing for the establishment of a high school in Labette county was under consideration. Some of the expressions there found look to the conclusion that the legislature was the judge not only of the matter as to when a general or special law was applicable to the accomplishment of a special purpose, but also as to whether the nature of the law was general or special, yet as the question there under consideration was clearly one of a special and local nature, the language should be interpreted with reference to such, rather than as a comment upon the larger question. The legislation criticized in *Chesney v. McClintock*, 61 Kan. 94, 58 Pac. 993, was sustained on the ground that the matter in dispute was not of a

general nature, but was local and special in its character. In the cases of *Darling v. Rodgers*, 7 Kan. 592, and *Robinson v. Perry*, 17 id. 248, the principle contended for was recognized and applied. These cases have been somewhat criticized, and perhaps properly so, for it is doubtful if the laws there held to be general in their nature are so.

Some of the state constitutions, like that of Ohio, provide that "all laws of a general nature shall have a uniform operation throughout the state." Concerning such, Mr. Sutherland, in his work on Statutory Construction, section 118, says:

"The injunction to pass general laws when they can be made applicable is imperative as to subjects of a general nature, where laws of a general nature are required to have a uniform operation. The questions affecting the validity of such laws are judicial; the courts must determine what are laws of a general nature, which must be so framed as to operate with uniformity."

Very many cases could be cited holding that language such as is used in the constitution of Ohio, above quoted, is mandatory upon the legislature, and in no case that we have been able to find is it doubted that the question under such constitutions, as to whether the nature of the law under consideration is general, so as to require it to be provided for by a law having uniform operation, is one for the courts. Many cases could be cited where the courts have considered and passed upon that question.

In our view, the mandatory character of this portion of the section is more clearly shown, and the reasons requiring the questions arising thereunder to be referred for judicial settlement intensified, by taking into consideration the remaining clause, for here is set over against the provision mandatory in form, that

"all laws of a general nature shall have a uniform operation," the antithesis, that "in all cases where a general law can be made applicable, no special law shall be enacted." This language recognizes the fact that laws will be needed other than those of a general nature—laws upon special or local matters. If in such cases a general law cannot be applied, then enact a special one. Necessarily this question, arising, as it does, at the time of the passage of the law, must be determined by the legislature.

We will pass then to the inquiry whether the nature of the act now in question is a general or a special one. As will be seen, it is an act relating to criminal procedure and practice. It interests every person in a designated class, no matter where he may reside. To have his case reviewed in a higher court is as important and valuable a right to the poor condemned man living in one county as in another. No reason can be shown why the public should not afford this right to one residing in a county of 10,000 inhabitants as well as to one residing in a county of 65,000. The nature of this act is as general as is any step in criminal procedure, or as is any law defining crime itself. Being so, the requirement is that its operation be uniform throughout the state. We do not conceive this phrase to mean that an act, in order to have uniform operation throughout the state, must affect every community or individual alike. It is entirely competent for the legislature to adapt its laws general in their nature to general classifications, either of individuals, surroundings, or conditions, but such classification must always be a natural one, not an arbitrary or fictitious one. If the nature of the law is general, that is, generic, its operation must be as general through-out the state as are the genera. In *Cass v. Dillon*, 2

Ohio St. 607, 617, Thurman, J., in speaking of the
provisions of the Ohio constitution corresponding to
the first clause of section 17 under discussion, said :

"The origin of this section is perfectly well known.
The legislature had often made it a crime to do in one
county, or even township, what it was perfectly law
ful to do elsewhere, and had provided that acts, even
for the punishment of offenses, should be in force, or
not, in certain localities, as the electors thereof, re-
spectively, might decide.    It was to remedy this
evil, and prevent its recurrence, that this section was
framed."

In *State v. Sheriff of Ramsey County*, 48 Minn. 236,
51 N. W. 112, 31 Am. St. Rep. 650, it was held that
a statute making an arbitrary classification with re-
spect to the subjects over which it operates, based upon
no reason suggested by a difference in their situation
or circumstances disclosing the necessity or propriety
of any different legislation in respect to them, is un-
constitutional.

It was held in *Wanser v. Hoss*, 60 N. J. L. 482, 525,
38 Atl. 449, 64 Am. St. Rep. 600 :

"The test of the generality of a law adopted is that
it shall embrace all and exclude none whose condition
and wants render such legislation equally appropriate
to them as a class.    It is also equally well settled by
decisions of our courts that, although population may
be made the basis of classification in statutes relating
to municipal bodies, such a classification cannot be
made the means of evading the constitutional inter-
dict of local or special laws.    The question whether
any particular statute is local or special must be de-
termined not upon its compliance with a legislative
classification, but upon whether, having regard to the
character of the legislation and the limitation upon it
contained in the act, the statute is or is not a general
law as defined by the courts."

In *Vermont Loan and Trust Co. v. Whithed*, 2 N. Dak.

82, 49 N. W. 318, the court used this language, (page 93) :

"A 'general law,' as the term is used in this constitutional provision, is a public law of universal interest to the people of the state, and embracing within its provisions all the citizens of the state, or all of a certain class or classes of citizens. It must relate to persons and things as a class, and not to particular persons or things of a class. It must embrace the whole subject, or a whole class, and must not be restricted to any particular locality within the state."

In the same case the court ruled further (page 94) :

"The legislature has power to classify persons and subjects for the purpose of legislation, and to enact laws applying specially to such classes, and while the laws thus enacted operate uniformly upon all members of the class they are not vulnerable to the constitutional inhibition under consideration. But this power of the legislature is circumscribed. It is not an arbitrary power, waiting the whim of the legislature. Its exercise must always be within the limits of reason, and of a necessity more or less pronounced. Classification must be based upon such differences in situation, constitution or purposes between the persons or things included in the class and those excluded therefrom as fairly and naturally suggest the propriety of, and necessity for, different or exclusive legislation in the line of the statute in which the classification appears."

See, also, *Smith v. Judge of the Twelfth District*, 17 Cal. 547 ; *Brooks v. Hyde*, 37 id. 366 ; *Miller v. Kister*, 68 id. 142, 8 Pac. 13 ; *Groesch v. The State*, 42 Ind. 547 ; *The State, ex rel. Hargrave, v. Reitz, Auditor*, 62 id. 159, 30 Am. Rep. 203 ; *Hanlon v. The Board of Commissioners of Floyd County*, 53 id. 123 ; *Nichols v. Walter*, 37 Minn. 264, 33 N. W. 800 ; *Ewing v. Hoblitzelle*, 85 Mo. 64 ; *Van Riper v. Parsons*, 40 N. J. L. 123 ; *State, ex rel. Richards, v. Hammer*, 42 id. 435 ; *State Board of*

*Assessors v. Central R. R. Co.*, 48 id. 146, 4 Atl. 578.; *Freeholders of Hudson v. Buck*, 51 id. 155, 16 Atl. 698; *Delaware Bay & Cape May R. R. Co. v. Markley*, 45 N. J. E. 139, 16 Atl. 436; *Wheeler v. Philadelphia*, 77 Pa. St. 338; *Reading v. Savage*, 124 id. 328, 16 Atl. 788.

We feel sure that there will be no question raised that the act in question is general in its nature. Evidently the legislature so thought, for it is couched in general terms.

We are thus brought to the question whether it has a uniform operation throughout the state, within the meaning of these words in the constitution. We answer this question in the negative. It applies to a given class within but one county. It does not afford relief to those of the same class in any other portion of the state. No reason can be shown justifying this discrimination. The classification upon which it is sought to be justified is one of population, but, as applied to the matter involved, such classification is an arbitrary one, hence invalid. (*Livingston Loan and Building Association v. Drummond*, 49 Neb. 200, 68 N. W. 375.) We do not mean to hold that a classification for any purpose based upon population would be invalid. For a great many purposes, such a classification would be most reasonable and natural, but for the classification here attempted it is not. Indeed, it is very apparent that the classification attempted was only for the purpose of avoiding the constitutional inhibition. The court takes judicial notice that Wyandotte county is the only one in the state affected, it being the only one having the specified number of inhabitants. But were there many more affected, the condition would not be changed, for the law is general in its nature and *must* have uniform operation

throughout the state. Because it does not, it is partial, denies the equal protection of the law to all, and is invalid under section 17, article 2, of the constitution.

The writ will be denied.

All the Justices concurring.

POLLOCK, J., concurring: I concur in the decision made in this case but I do not agree with all that is said in the opinion. The legislature is not a judicial body and cannot conclusively determine any question of its power under the constitution.