## THE PEOPLE, Plaintiffs, *v.* A. J. GRIFFIN and E. B. BALL, Defendants.

SUNDAY LAW—POLICE.— The act for the better observance of the Sabbath day, approved January 8, 1873, is a mere police regulation. It does not interfere with any vested rights acquired before its passage, and is a valid law.

CERTIFIED to this court by the district court of the second judicial district, Ada county.

*F. E. Ensign, district attorney, and J. Brumback,* for the plaintiffs.

*J. W. Huston and Clitus Barbour,* for the defendants.

NOGGLE, C. J., delivered the opinion. WHITSON and HOLLISTER, JJ., concurred in the judgment.

The defendants in this prosecution are charged with a misdemeanor, for that on the twelfth day of January, 1873, being the first day of the week commonly called Sunday, they did, unlawfully and willfully, keep open for a long time, certain rooms, generally known as the Overland Exchange, situated in Boise city, Ada county, Idaho territory, in which said Overland Exchange intoxicating

liquors, lager beer, and ale were then and there kept for sale at retail, in violation of the third section of the act entitled an act to provide for the better observance of the Sabbath day, approved January 8, 1873, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the people of the United States of the territory of Idaho. The defendants appeared before the justice of the peace and interposed a demurrer to the complaint, assigning two causes of demurrer. A third cause also appears, but it is more in the nature of advice than a demurrer, and for that reason it will not be considered.

The first cause assigned is that the court had no jurisdiction over the subject-matter of the action. The second cause is " that the complaint does not state facts sufficient to constitute an offense either at common law or against the statute of Idaho."

We think the justice of the peace very properly overruled the defendant's demurrer. From that decision the defendants appealed to the district court. That court, on the request of the parties to the prosecution and defense, certified the case to the supreme court for the purpose of speedily and satisfactorily setting the force and effect of the law providing for the better observance of the Sabbath day, approved January 8, 1873.

The counsel for the defendants claim that the defendants are protected from all such prosecutions as this by their license. Again, it is insisted by them that this law punishes for the same offense twice, and the counsel insist that keeping a room open on Sunday and selling intoxicating liquor therein, is one and the same offense. We think the law makes each of these acts an offense. The counsel for the defendants further insist that requiring that the saloons be closed four days in each month is double taxation; that the license was granted for revenue, and is taxation, and that this law can not amount to a police regulation. The counsel quote much authority in support of their doctrine. We have examined most of the cases referred to with some care, as well as the law on the side of the people; from all of which this court is of the opinion that the judgment of

the justice was correct in overruling the defendants' demurrer. We think this law is a mere exercise of the police power of the legislature. Some other reasons were urged by the counsel against the validity of the law under consideration that it is unnecessary to notice.

On the part of the people, it was earnestly claimed by the counsel that the law under consideration is the result of a judicious exercise of the police power of the territory, and insist (as we think correctly) that the legislature had full power to pass the law as a police regulation. Blackstone defines such laws as "the due regulation of domestic order, whereby the inhabitants of a state, like a well-governed family, are bound to conform their general behavior to the rules of propriety, good neighborhood, and good manners, and to be decent, industrious, and inoffensive in their respective stations."

"We think it is a settled principle," says Chief Justice Shaw, "growing out of the nature of well-ordered civil society, that any holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community. All property in this commonwealth is held subject to these general regulations, which are necessary to the common good and general welfare."

The defendants claim that by virtue of the license they hold from the territory of Idaho, they have a contract with the territory that guarantees to them the right to keep their place of business open every day in the year; that to close their said place of business one day in seven, would be a violation of their agreement made with them when they took their license, and would deny them the privilege of doing business at least four days in each month. Citizens of a state or territory can have no vested rights in its existing general laws which can preclude their amendment or repeal, and there is no implied promise on the part of either to protect its citizens against incidental injury occasioned by changes in the law. (Cooley's Const. Lim. 284.)

The taking out of a license, at most, can only be taxation, and creates no contract between the holder of the license and the people, but if by any possibility it could be considered a contract, it was made subject to the right of the legislature to change or modify the law under which it was granted in the exercise of its police power.

The court is of the opinion, therefore, that unless the legislature are restrained by the organic act or by some law of congress, in enacting the law under consideration, the legislature, as a police regulation, attempted no more than to establish a rule of civil conduct for the people, with which the court have no right to interfere to prevent. With the motives that operated upon the legislature to pass the law, we have nothing to do; they may have been as various as the minds of the different members of that body, and still their motives may have been designed for good. The court is not expected to make or change the law, but to construe it, and determine the power of the law and the power the legislature had to pass such a law; whether that power was wisely or unwisely exercised, can be of no consequence. The character of the act is not changed by any of these things; we must consider it as a part of the police power of the legislature, in the exercise of which that body established the law as a civil regulation for the government of man.

Supposing that, in addition to this law in the regulation of the police power, the legislature should have enacted that all places of public business in Ada county, Idaho territory, should be closed, and remain closed, throughout each non-judicial day, or had enacted that thereafter any person who should sell or give any intoxicating liquor to any minor, or should suffer any minor to play at, or in any way engage in any game of chance, in the place of business of such person, that such person, upon conviction of any such offense, should, in addition to paying a fine, etc., forfeit his license for carrying on such business. We know of no power that could prevent such a law. Should the legislature be of the opinion that the public good required such a law, then courts would have no legal power to determine

that such an act was even wrong. The cousel for defendants insist with great earnestness, that laws of a general nature must be uniform in their operation throughout the whole state or territory, and that because this law only applies to one county, it is not a general law.

We think it a general law for the county of Ada, uniform in its operation upon the same classes of people throughout the county. Cooley, in his Constitutional Limitations, 390, says, after speaking of the business of common carriers, bankers, etc., mechanics' liens, etc.: "If otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class, or locality, to which they apply, and they are then general laws." (See also 37 Cal. 376.) It is urged, as another objection to this law, that it is against public policy. It is not for this court to determine whether the law is politic or not. It may be against public policy for the people of Ada county to rest one day in seven, and the court can not be asked to so determine, for the purpose of destroying any law. In nearly all the states in this Union laws prohibiting secular labor and business of various kinds on the Sabbath day, commonly called Sunday, have been enacted and sustained, with one single exception, in which Judge Field's dissenting opinion so much better accords with wholesome law, that we take the liberty to refer to it, believing it to be the better law. (*Ex parte Newman*, 9 Cal. 518.)

Laws should be sustained and executed that are enacted for the benefit of mankind. More such laws might greatly tend to promote good order in society, increase personal security, public tranquillity, and the supremacy of civil government, and they would, generally, better the condition of society. As long as civil government exists, the legislature must have the power to do what it deems necessary to protect that government, and as long as that body have any regard for the people, to whom they must answer, it is proper that the legislature should feel under obligation to see that laws are enacted that will promote good order in society; in this it may often fail, and, it may be, without any fault of theirs.

A faithful discharge of legislative power is the only way any government can perpetuate a proper and healthy existence; and to this end the organic act confers upon the legislature of Idaho territory the power over all rightful subjects of legislation. Shall the people of Idaho, in this enlightened nineteenth century, try over again the experiment of a world of human beings unblessed with the salutary restraints of law, simply because we do not get such as we want? Or should the courts sustain a mere police regulation that, properly administered, must result in good to the community? We think the law had better be sustained. We may also think that we could have suggested a more politic law; one that would have been operative throughout the territory, and therefore more general.

After carefully considering all that has been said for and against the law, we have concluded to sustain it as it is, believing that the legislature, in the exercise of its politic power, did all they could then do to restrain evil and regulate the conduct of society. Allow the people of Idaho to trust, as they must, to the wisdom of the same power hereafter to make the law more perfect, and to extend its influence over the whole territory. Small as the beginning is, which the legislature have made by this limited reform, it certainly has commenced in the right place; and, we think, the legislature is entitled to great credit for the little that has been done in the exercise of its police power. The law under consideration is a general law; and it is designed to operate uniformly throughout the county of Ada, upon the same classes of people.

The law, in its nature, is not vindictive any further than is necessary to vindicate good order. Such a vindication can injure no one; it can not mean more than to maintain its own justice; it would be worthless if it did less. Cruel laws make cruel people; but is this law a cruel law? We think that no police regulation like the law before us can be cruel. Laws may either be right or wrong, virtuous or vicious, accordingly as such laws are benevolent or selfish. A law designed for the regulation and protection of society can neither be vicious, selfish, nor wrong. This law to

31

provide for the better observance of the Sabbath day, approved January 8, 1873, must be regarded as reformatory, resulting from an exercise of the police power of the legislature of Idaho territory.

This limited reform could hardly have been commenced in a more appropriate part of the territory. Commencing such legislation as this, making it alone applicable to the county in which the seat of government is located, will be likely to so educate the people and their servants, that the law may be amended, but not repealed.

It is the opinion of the court, therefore, that the law should be sustained.

This case will be remanded to the district court, with direction to affirm the judgment of the justice of the peace, with costs.