Dickman, J.
In the case of Gordon v. The State, there was a motion to quash the indictment, on the ground, that it did not set forth the name or names of any person or persons to whom the sale of intoxicating liquors was made, and that it was objectionable for duplicity. The indictment alleged, that the accused unlawfully sold intoxicating liquors as a beverage, to divers persons whose names to the jurors were unknown, This we deem sufficient. In those cases in which the names of third persons cannot be ascei’tained, they may be thus designated, in the usual form, as “persons whose names are to the jurors unknown.” Thus, an indictment for harboring thieves unknown, *626 is sufficient from the necessity of the case, upon the fair presumption, that the names cannot be discovered. And in indictments for assault, for felonious homicides, and the like, the person injured or killed may be mentioned as unknown, if such is the fact. 1 Chitt. Cr. Law, 211, 212; 2 Hawk’s PI. of Cr. 231; Commonwealth v. Hitchings, 5 Gray, 482; Blodget v. The State, 3 Ind. 403; People v. Adams, 17 Wend. 475 ; Reed v. The State, 16 Ark. 499; Reg. v. Campbell, 1 Car. & K. 82; Reg. v. Stroud, 2 Moody, 270.
The indictment was not bad for duplicity because it charged,, that on the 22d day of December, 1888, the accused sold intoxicating liquors to divers persons whose names to the jurors-were unknown. For aught that appears upon the record, the offense charged in the indictment may be deemed a single transaction occurring at the time and place set forth, and a conviction may be had upon proof of sale to one person. Upon the subject of duplicity, Waite, J., in Barnes v. The State, 20 Conn. 232, observed, “No matters, however multifarious, will operate to make a declaration or information double, provided, that all taken together, constitute but one connected charge, or one transaction.” A man may, accordingly, be indicted for the battery of two or more persons in the same count; or for a libel upon two or more persons, when the publication is one single act; or for selling liquor to two or more persons without rendering the count bad for duplicity. State v. Anderson, 3 Rich. 172; Rex v. Benfield, 2 Bur. 980, 984; Rex v. Jenour, 7 Mod. 400. In Rex v. Benfield the question was asked, “ Can not the king call a man to account for a breach of the peace, because he broke two heads instead of one? How many in-formations have been for libels upon the king and his ministers ? ”
But the further objection is raised, that the statute upon which the indictment was founded, is so defective in its provisions, that it cannot be properly executed, and therefore has no validity as a law. The grounds of objection are, that the act does not provide adequate means for determining, whether-the signatures on the petition to the township trustees for an election are genuine, and whether the signers constitute one- *627 fourth of the qualified electors of the township; that there is no provision for the filing and preservation of the petition; and that, as the record of the result of the election is made only prima fiacie evidence that the selling of intoxicating liquors is prohibited and unlawful, it will become an issue of fact in every prosecution under the law," whether the law is in force or not. It may be fairly presumed, that the township trustees will not order a special election, as provided in the statute, until they have satisfactory evidence, that the petition to them has been signed by the requisite number of the qualified voters of the township. Nor is it to be presumed, that the township officers, in whom the people have reposed so much trust and confidence, will neglect to file and preserve the petition presented to them in their official capacity. And although the record of the result of the election is not made conclusive evidence, the statute is not thereby rendered inoperative, An act though not clear and definite — though vague, and indefinite — as to its method of enforcement, may nevertheless be valid. It will not be declared void because it is difficult of execution, or because it fails to accomplish its purposes as fully as the legislature designed. As decided in Cochran v. Loring, 17 Ohio, 409, 427, “Though a law is imperfect in its details, it is not void, unless it is so iiñperfect as to render it impossible to execute it.” The objection, therefore, above stated, does not impair the validity of the statute in question.
It is claimed, however, in the cases at bar, that there are constitutional objections which are fatal to the validity of the act of March 3, 1888. In the first place it is contended, that the act is of a general nature, and has not a uniform operation throughout the state, and is therefore in conflict with sec. 26, Art. II, of the constitution. Conceding for. the purpose of this inquiry, that the act under consideration is a law of a general nature, it satisfies, in our view, the constitutional requirement that it shall be of uniform operation. It is an act, “to further provide against the evils resulting from the traffic in intoxicating liquors, by local option in any township in the state of Ohio.” One-fourth of the qualified electors of any township, may petition the trus *628 tees for the privilege of determining, by ballot, 'whether the sale of intoxicating liquors as a beverage shall be prohibited. The election is to be conducted, in all respects the same, in every township, and if the result of the vote is against the sale, the same penalty is attached in every township for carrying on the traffic.' The provisions of the act are bounded only by the limits of the state, and uniformity in its operation is not destroyed, because the electors in one or more townships may not see fit to avail themselves of its provisions. The act makes no discrimination between localities to the exclusion of any township. Every township in the state comes within the purview of tbe law, and may have the advantage of its provisions by complying with its terms. The operation of the statute is the same in all parts of the state, under the same circumstances and conditions.
By the municipal code of May 7, 1869, section 199, it was declared, that all cities and incorporated villages should, among other things, have the power — and might provide by ordinance for the exercise of such power -— “ To regulate, restrain and prohibit, ale, beer and porter houses or shops; and houses and places of notorious or habitual resort for tippling ■or intemperance.” The uniformity in the operation of this law of a general nature, was not measured 'and fixed by the number of cities and incorporated villages that might exercise the granted power. One or many, might, like the village of MeConnelsville, pass the neeful ordinances, but the provision of the code was none the less of uniform operation throughout the state. The feature of uniformity in the local option law under consideration, would no more be marred because the qualified electors of the townships generally fail to adopt its provisions, than the above enactment of the municipal code would have ceased to operate uniformly, because cities and incorporated villages did not generally pass ordinances to prohibit ale, beer and porter houses.
A clause in the constitution of California, like that in the constitution of this state, provides that, “ all laws of a general nature shall have a uniform operation.” In Smith v. The Judge of the Twelfth Judicial District, 17 Cal. 554, Bald *629 win, J., referring to this provision says, “ The language must be carefully noted. The expression is, that these laws of a general nature shall be uniform in their operation; that is, that such laws shall bear ecpially in their burdens and benefits upon persons standing in the same category.”
In Brooke v. Hyde, 37 Cal. 375, it was said by Sanderson, J., “ By uniform operation, I understand an operation which is equal in its effect upon all persons or things upon which the law is designed to operate at all.” The meaning of the provision was there held to be, “that every law shall have a uniform operation upon the citizens or pei-sons, or things of any class, upon whom or which it purports to take effect, and that it shall not grant to any citizen, or class of citizens privileges, which, upon the same terms, shall not equally belong to all citizens.”
Section 17, Article II, of the constitution of Kansas also requires that, “ all laws of a gederal nature shall have a uniform operation throughout the state.” In Commissioners of Leavenworth County v. Miller, 7 Kan. 479, it was held, that where the provisions of an act are designed for the whole state, and every part thereof, such act has, in contemplation of section 17, Article II, of the constitution, a uniform operation throughout the state, notwithstanding the condition or circumstances of the state may be such as not to give the act any actual or practical operation in every part thereof. In that case, there came under review an act of the legislature which provided, that the board of county commissioners of any county to, into, through, from, or near which any railroad might be located, might subscribe to the capital stock of any such railroad corporation, in the name and for the benefit of the county, to an amount not exceeding the sum of $300,-000, in any one corporation, and might issue bonds of the county in payment for the stock. But no such bonds should be issued, until the question Avas first submitted to a vote of the qualified electors of the county, at some general or some special election. The Commissioners of Leavenworth County called a special election, to determine by vote of the electors, whether the board of commissioners should subscribe $250,000 *630 to the capital stock of the “Union Pacific Railway Co. Eastern Division,” and issue the bonds of the county in payment for the stock. Miller sued the commissioners upon one of the bonds issued, and it was set up in defense, that the act under which the bonds were issued was unconstitutional, that the bonds were therefore issued without authority and were void. On this point the language of the court was, “ We scarcely think it necessary to say anything with reference to section 17, Article II of the constitution. The act under consideration is so obviously in harmony with this section, that the question attempted to be raised upon its supposed incongruity needs no elucidation from us. All the provisions of said act are expressly enacted for the whole state, and for every part of the state, and it is no more necessary that the same amount of stock be taken in each and every county of the state, in order that the act shall have a uniform operation therein, than that the same number of men shall be executed in each county of the state, in order that the law punishing murder in the first degree shall have uniform operation throughout the state.”
We cannot reach the conclusion that, because the electors of one township may decline to petition the trustees to order a special election to determine by ballot whether the sale of intoxicating liquors as a beverage shall be prohibited, every other township in the state shall be deprived of that privilege, on the ground that the act is not- capable of a uniform operation. Without seeking an authoritative definition of the term “ law of a general nature” in its constitutional sense, we are of the opinion, that the act of March 3, 1888, is not open to the objection that it is not susceptible of the uniform operation contemplated in the constitution.
But it is further contended, that the act is a delegation of legislative power to the people, and therefore in contravention of section 1, Article II, of the constitution. That section provides, that the legislative power of the state shall be vested in a general assembly, which shall consist of a senate, and a house of representatives. It is a general rule, that the agent whose employment and trust are personal, can not, without express or implied authority from his principal, delegate his power. *631 And it is a settled maxim, that when the people, in their sov■ereign capacity, have by the constitution conferred the lawmaking power upon the legislature, that department can not ■delegate such power to any other body. The power must remain where located, and laws must be enacted through the ■established agency, until there is a change in the constitution itself. Yet, while the principle may be universally recognized, that the legislature can not evade its constitutional trustas the law-making agent, difficulty may arise in determining, whether ■by any special act the legislature has, directly or indirectly, sought to divest itself of its constitutional authority and obligation. The natural tendency of the legislative department is to encroachment, and we may well be inclined, in the first instance, to question whether it has relinquished any portion of its power.
In the exercise of the duties devolved upon the legislative ■branch of the state government, it is manifest that discretion ¡and judgment are required, not only in determining the subject-matter of legislation, but not unfrequently in ordering the the conditions or contingencies upon which laws are to be carried into effect. It may be deemed expedient in one case, to provide for preliminary action before a law is executed, which ¡under other circumstances would not be adopted. In requiring .such proceedings prior to the enforcement of a law, the legislature need not be prevented from keeping within the strict line ■of its authority.
It is evident, we think, that the act whose constitutional validity is called in question, was a complete law when it had passed through the several stages of legislative enactment, and •derived none of its validity from a vote of the people. In all its parts it is an expression of the will of the legislature, and its execution is made dependent upon a condition prescribed by the legislative department of the state. By its terms, it was made to take effect from and after its passage. The qualified electors derive their authority to petition the trustees, and the trustees obtain their authority to order a special election, ■directly from the legislature. The right of the electors to register their votes for or against the sale of intoxicating *632 liquors, is conferred by the same body. If a majority of the votes cast at such election should be against the sale, the traffic in intoxicating liquors is thereby prohibited and made unlawful, by virtue of the act of the general assembly, which may at once, if a change should come over the legislative will, repeal the law and avoid the result, of the election. So far from the vote of the electors breathing life into the statute, it is only through the statute that the electors are entitled to vote' at the special election. While they are free to cast their votes, the consequence of their aggregate vote is fixed and declared by the act of the legislature. The penal sanction of the act is subject to no modification by the action of the electors, and it is an elementary principle that, “ the main strength and force of a law consists in the penalty annexed to it. Herein is to be found the principal obligation of human laws.” 1 Black. Com. 57. In some of the authorities which we have examined, the idea is prominent, that when the voters are called on to express by their ballots their opinion as to the subject-matter of the law, they declare no consequence, prescribe no penalties, and exercise no legislative functions. The consequences, it is said, are declared in the law, and are exclusively the result of the legislative will.
In Commonwealth v. Weller, 14 Ky. 218, an act to prohibit the sale of intoxicating liquors in the county of Bullitt, provided that, “it shall take effect whenever it shall be ratified by a majority of the voters of said county.” The view taken by the court in construing t'he act was, that the legislature was not attempting to delegate its authority to a new agency ; that when the act passed the legislature, and was signed by the executive, it became a law, and by reason of the law, the people interested in its passage were authorized to vote for or against its provisions; that the making its operation to depend on the popular vote was a part of the law itself, and its going into operation on the contingency that the people' voted for it, was the legislative will on the subject.
In the well known case of C. W. & Z. Railroad Co. v. Com’rs of Clinton County, 1 Ohio St. 77, the county commissioners were authorized by an act of the general assembly, to *633 subscribe to the capital stock of the company, the question of subscription having been first submitted to the qualified electors of the county. “We think' it,” says Ranney, J., in delivering the opinion of the court; “ undeniable, that the-complete exercise of legislative power by the general assembly, does not necessarily require the act to so apply' its provisions to the subject matter, as to compel their employment without the intervening assent of other persons, or to prevent their taking effect, only, upon the performance of conditions expressed in the law. * * * The true distinction,, therefore, is, between the delegation of power to make the law,, which necessarily involves a discretion as to what it shall be, and conferring an authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first-cannot be done; to the latter no valid objection can be made.”
The local option act under consideration is, virtually, a law to prohibit the sale of intoxicating liquors upon the contingency, that a majority of the qualified electors of any township shall vote against the sale. Practically, it is-to go into operation upon such contingency. “ Many laws,” says Scott, J., in Peck v. Weddell, 17 Ohio St. 271, “can only operate upon the happening of certain contingencies; yet they are nevertheless valid.” Indeed, the doctrine is generally accepted, that it is within the scope of the legislative power, to enact laws which shall not take effect until the happening of some particular event, or in some contingency thereafter to arise, or upon the performance of some specified condition. May not the execution of a law depend upon the condition, of a popular vote,‘as well as upon any other fair and reasonable contingency? The language of Redfield, C. J., in State v. Parker, 26 Vt. 357, carries with it great force. “After a full examination,” says he, “of the arguments by which it is attempted to be maintained that statutes made dependent upon such contingencies are not valid laws, and a good deal of study and reflection, I must declare, that I am. fully convinced — although at first, without much examination, somewhat inclined to the same opinion — that the opinion is the result of false analogies, and so *634 founded upon a latent fallacy. It seems to me that the distinction attempted between the contingency of a popular vote and other future uncertainties, is without all just foundation in sound policy or sound reasoning, and that it has too often been made more from necessity than choice —rather to escape from an overwhelming analogy, than from any obvious difference in principle in the two classes of cases; for, * * * •one may find any number of cases, in the legislation of congress, where statutes have been made dependent upon the shifting character of the revenue laws, 'or the navigation laws, or commercial rules, edicts, or restrictions of other countries.” The act of congress which came under review before the Supreme •Court 'of the United States, in the case 'of the Brig Aurora v. The United States, 7 Cranch, 382, is a familiar example of our federal legislation.
In the case of Smith v. Janesville, 26 Wis. 291, Dixon, C. J., in discussing this subject, thus observes: “ It is said that the act is void, or at least so much of it as pertains to the taxation of shares in national banks, because- it was submitted to a vote of the people, or provided that it should take effect only after approval by a majority of the electors voting on the subject at the next general election. This was no more than providing that the act should take effect on the happening of a certain future contingency, that contingency being a popular vote in its favor. No one doubts the general power of the legislature to make such regulations and conditions as it pleases with regard to the taking effect or operation of laws. They may be absolute, or conditional and contingent; and if the latter, they may fake effect on the happening of any event which is future and uncertain. Instances of this kind of legislation are not unfrequent. * * * We arc constrained to hold, therefore, that this act is and was in all respects valid from the time it took effect; and consequently that there, was no want of authority for the levy and collection of the taxes in question.”
We are aware, that there are adjudged cases which, it is urged, militate against the views we herein advance. The cases of Rice v. Foster, 4 Harr. 479, and Parker v. The Com *635 monwealth, 6 Pa. St. 507, are mainly relied upon; but, in Railroad Company v. Commissioners of Clinton County, supra, this court drew the distinction, that the voters in those cases were not called upon to determine on the execution of a law under and in conformity to its provisions, but whether the law itself should continue to exist. And in Lock’s Appeal, 72 Pa. St. 491, the case of Parker v. The Commonwealth was held to, have been overruled soon after it was decided ; not in express terms, but by undermining its foundation in holding that laws ■could constitutionally be made dependent on a popular vote for their operation. Agnew, J., said., “This popular vote is but the law’s appointed means of determining a result, which the law enacts, in an alternative form, shall be the contingency ■of its operation. * * * The true distinction, I conceive, is this: the legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine ■some fact or state of things upon which the law makes, or intends to make, its own action depend.”
There have been numerous decisions and much discussion ■concerning the validity of statutes denominated local option laws; and the subject of contingent legislation has given rise to wide debate and many adjudications, but we do not consider it necessary, in this branch of our inquiry, to make further citation of cases or opinions.
It is argued however, that the act of March 3, 1888, seeks to prohibit the liquor traffic, while the legislature has power only to regulate it, and is therefore in conflict with the constitution. The 9th section of Article ~V of the constitution, which is the same as section 18 of the schedule, is as follows: “ No license to traffic in intoxicating liquors, shall hereafter be granted in this state; but the general assembly may by law, provide against the evils resulting therefrom.” Suppose that section were eliminated from the constitution, it would not be easy to establish that, the legislature might not, under the broad grant of legislative power, sanction or prohibit, at its pleasure, the traffic in intoxicating liquors as a beverage. “ The legislative power of this state shall be vested in a general assembly,” is the language of the-constitution; and in *636 the provisions of that section of the schedule, we can find no-implied limitation upon the legislative power, whereby, the general assembly would be forbidden, to legislate for the prohibition of such traffic in intoxicating liquors. Whether under the ordinary constitutional limitations, the absolute prohibition of the liquor trade is a constitutional exercise of legislative authority, is a question that has largely engaged the-attention of judicial tribunals. The question involves a consideration of the police power, and the department of government which can and does exercise that power, is the legislature ; and it is among the limitations upon the legislative power, that we are to seek the limitations upon the police power over the liquor traffic. In the recent case of Mugler v. Kansas, 123 U. S. Rep. 623, it was recognized as a fundamental rule that, it belongs to the legislative branch of the government to exert what are known as the police powers of the state, and to determine, primarily, what measures are appropriate or needful for the protection of the public morals, the public health, or the public safety. Justice Harlan in pronouncing the opinion of the court in that case says : “ If, therefore, a state deems the absolute prohibition of the manufacture and sale, within her limits, of intoxicating liquors for other than medical, scientific, and manufacturing purposes, to be necessary to the peace and security of society, the courts can not, without usurping legislative functions, override the will of the people as thus expressed by their chosen representatives. They have nothing to do with the mere policy of legislation.” In Tiedeman’s Limitations of Police Power, § 103, this subject has been treated with much research and ability; the numerous cases are there collected; and it is stated by that author as "evident, that the decisions of the courts in different parts of the country, have generally sustained laws for the prohibition of the sale of intoxicating liquors, in any manner, form or bulk whatever, and on the ground that the trade works an injury to society, and may, therefore, be prohibited..
The grant of legislative power in the present constitution, is found, in very nearly the same words, in the constitution *637 ■adopted in 1802. But, in view of the practice under the former constitution, which contained no provisions relative to the subject of intoxicating liquors, and under which many' acts called “ license acts ” were passed by the general assembly, the framers of the present constitution inserted the section of the schedule, which, when adopted and made part of the constitution, would prevent the granting of licenses to traffic in intoxicating liquors, and empower the general assembly to provide against the evils resulting therefrom. The restriction upon the legislative power which forbids the granting of any •such license, can not, we conceive, be construed into a definitive settlement of the extent to which the legislature may go, in the direction of prohibiting the traffic in intoxicating liquors as a beverage.' To say that no license shall be granted, is not to say, by implication, that such traffic may not be prohibited. The refusal to license is obviously not out of the direct line of prohibition. The adoption by the people, as part of the constitution, of a provision which placed under interdiction the license to trade in liquor, was an expression of the popular will that, the state should not thereafter, by its affirmative action, through the general assembly, extend favor or encouragement to the traffic. But, though the authority of the legislature was thereby abridged, to the extent of forbidding the passage of any act to license the traffic, the ample grant of legislative power to the general assembly remained sufficient, when called into exercise, for all the purposes of prohibiting the sale of intoxicating liquors as a beverage. If any doubt, however, was to arise in the future, as to the authority conferred by the grant of legislative power, over that form of the liquor traffic, the removal of that doubt was sufficiently assured by the provision, that the general assembly may by law, provide against the evils resulting from the traffic.
"When the the general assembly was clothed with authority by the constitution, to provide by law against the evils resulting from the'traffic in intoxicating liquors, it was left to its discretion — subject to such express limitations as the constitution imposed — to select the means whereby those evils might be avoided. The. legislature, in the plenitude of its discretion, *638 having determined upon the methods of providing against such, resulting evils, it would not be for the judicial branch of the state government to interfere. “ If,” says Mcllvaine, J., in The State v. Frame, 39 Ohio St. 399, “ in the judgment of the general assembly, it be necessary, in order to prevent evils resulting from the traffic, that the sale and use of intoxicating liquors as a beverage, be absolutely prohibited, we can see no constitutional ground upon which such exercise of its judgment and discretion can be reviewed.” And if in view of diminish • ing those evils, a system of regulation is adopted which practically prohibits the sale of intoxicating liquors as a beverage, it is not for this court to say, there has been a misuse of legislative discretion. This court has held, in Adler v. Whitbeck, 44 Ohio St. 539, that the general assembly is vested with the-power, in regulating the traffic in intoxicating liquors, to levy a tax upon the business; but, while the tax is fully authorized, it may, from its magnitude prove so onerous as virtually to amount to a prohibition of such business.
A tax thus burdensome, when levied, might operate as a prohibition of the sale of intoxicating liquors as a beverage, as well in th.e townships, as in the municipal corporations of the state. But, it is contended, that there is no authority to directly prohibit the sale in townships, whatever may be the power of the general assembly in regard to municipal corporations, through the medium of city or village ordinances. In our judgment, when it is conceded, that in providing against the evils resulting from the traffic in intoxicating liquors as a beverage, the legislature may, without infringing the constitution, prohibit the sale, such prohibition may extend to-townships as well as to other divisions of the state. Whatever legislation may be legitimate and necessary for the mitigation or suppression of the evils resulting from the traffic, should reach localities where such evils may exist-, whether-townships or municipal corporations.
After examining the many authorities cited, and giving due weight to the arguments of counsel, we are unable to reach the conclusion, that the statute under review is void for repugnancy to the constitution, on any ground that has beem *639 taken. Certainly, we do not feel that clear and strong conviction of the incompatibility of the constitution and the law with each other, which, as Chief Justice Marshall said, should always exist before the legislature is to be pronounced to' have transcended its powers, and its acts to be considered as, void.
The judgment, therefore, of the court of common pleas in Gordon v. The State, and of the circuit court in Santoro v. The State, should be affirmed.

Judgment accordingly..