Dickman, C. J.
The first question that claims our consideration is, whether the act of the gen-, eral assembly under which the defendant below was indicted is unconstitutional and void. The act, it is contended, is of a general nature without having a uniform operation throughout the state, and is therefore in conflict with section 26, article II of the constitution of Ohio. That the act is ■ general in its nature within the meaning of the constitution, and subject to the constitutional requirement as to uniformity of operation, will be apparent, we think, upon examination. It is a law of general interest to all the inhabitants of this state, and its penal sanctions extend to all persons within the borders of the state who violate its provisions. Its subject matter is of a general nature, inasmuch as it concerns the public at large that the evils resulting from the sale of intoxicating liquors within the limits of the state should be suppressed. And section 18 of the schedule of the constitution, in ordaining that no license to traffic in intoxicating liquors shall hereafter be granted in this state, and that the general assembly “may by law provide against the evils resulting therefrom, ” virtually declares that the *50 regulation of such traffic is one of a general nature and pertains to the public welfare.
It is urged, however, that while the law is thus general and not special in its character, it does not operate uniformly throughout the state, within the requirements of the constitution. The act contains two sections. One section imposes a penalty for selling or giving away intoxicating liquors, at any placé within one and one-half miles outside the boundary line of the lands occupied by any home for disabled volunteer soldiers established by the government of the United States; and one imposes the same penalty for committing the same offense at any place within one mile outside of the boundary line of' the lands occupied by any home for disabled volunteer soldiers established by the state of Ohio. Both sections are in pari materia, so far as they relate to the selling or giving away of intoxicating liquors near homes for disabled volunteer soldiers; but while the first section refers to national military homes, the second has reference to soldiers’ homes established by the state of Ohio.
It will be conceded that if the act embraced only the first section relating to national military homes, it would not be open to the constitutional objection of not being uniform in its operation throughout the state. In Heck v. The State, 44 Ohio St., 536, it was held, that the clause “whoever sells intoxicating liquors within two miles of a place where an agricultural fair is being held •x * -x siian he fined,” etc., contained in section 6946, of the Revised Statutes, as amended May 2, 1885, is not in conflict with any provision of the constitution, and is a valid law. . “A law is general and uniform,” say the court, “that applies to all *51 persons and things coming within its provisions throughout the state. Its uniformity consists in the fact that no person or thing, of the description of any person or thing affected by it, is exempt from its operation.” The rule as to uniformity of operation requires that the law; shall have a uniform operation upon the persons or things of any class upon whom or which it purports to take effect; that it shall bear equally in its burdens and benefits upon persons and things standing in the same category. Smith v. Judge, 17 Cal., 554; French v. Teschemaker, 24 Cal., 544; Brooks v. Hyde, 37 Cal., 375.
But it is urged in behalf of the plaintiff in error that the homes for disabled volunteer soldiers contemplated in the statute, together constitute one class of such common characteristics, that the same penalty cannot be enforced against selling or giving away intoxicating liquors at a different distance from the national and Ohio soldiers’ homes respectively, without depriving the law, which is general in its nature, of a uniform operation, and giving to it a distinct, special and unlike application to the several members of the class. In view of the object and purpose of the statute, it is claimed that there is not a sufficient dissimilarity between such homes, as to call for and demand a separate and different statutory provision, defining and punishing sales or gifts of intoxicating liquors within a prescribed distance of their boundaries.
The National Home for Disabled Volunteer Soldiers at Dayton, in Ohio, referred to in the indictment of the plaintiff in error, was established by the government of the United States, under .sundry acts of congress now embodied in sections *52 4825 to 4837, inclusive, of the Consolidated and Revised' Statutes of the United States (1878). Under those sections it is provided that there shall be a board of twelve managers of the National Home, of which the' president, secretary of war, and'chief justice shall be members, who are to have perpetual succession, with powers to take hold, and convey real and personal property, establish a common seal, to sue and be sued in courts of . law and equity, to make by-laws, rules and regulations, not inconsistent with law, for carrying on the business and government of the home, and to affix penalties thereto. The persons entitled to the benefits of the home, and who may be admitted thereto, are all officers and soldiers who-served in the late war for the suppression of the rebellion, and the volunteer soldiers and sailors of the war of eighteen hundred and twelve, and of the Mexican war, and not provided for by existing laws, who have been or may be disabled by wounds received or .sickness contracted in the line of their duty. All inmates of the National Home -are made subject to the rules and articles of war, and in the same manner as if they were in the army.
Provision is made for the purchase of sites for homes, and for the erection of buildings. By section 4830, “The board of managers shall have authority to procure from time to time,'at suitable places, sites for military homes for all persons serving in the army of the United States at any time in' the war of the rebellion, not otherwise provided for, who have been or may be disqualified for procuring their own support, by reason of wounds received or- sickness contracted while in the line of their duty during the rebellion; and to *53 have the necessary buildings erected, having due regard to the health of locality, facility of. access, and capacity to accommodate the persons entitled to the. benefits thereof. ”
By section 1 of an act to provide for the establishment and maintenance of a.home for disabled and indigent ex-soldiers, sailors and marines of Ohio, passed April 30; 1886 (83 Ohio Laws, 107), it is enacted: “That there shall be established in this state an institution under the name of ‘The Ohio Soldiers’ and Sailors’ Home.”.’ By section 2 of the act, it.is enacted: “All honorably discharged soldiers, sailors and marines, who have 'served the United States government in any of its wars, and who are citizens of Ohio at. the date of the passage of. this act, and all soldiers of the national guard of Ohio, who have heretofore lost,..or may hereafter lose an arm, or leg, or his sight, while in the line and discharge of duty, who are not able to support themselves, .and are not entitled to admission to the national military homes, or cannot gain admission thereto, may be admitted to the home named in the preceding section, under such rules and regulations as may be adopted by the board of trustees hereinafter provided for. ’ ’
The independent management of the National Home at Dayton through agents of the United States — the provision made by law for the establishment of . similar institutions — the congregating at those institutions of the greater number .of disabled soldiers from all parts of the country, and the consequent increased tendency to social abandon, to give up to- natural impulses, and to seek release from artificial restraint — the fact that all the inmates are made subject to the rules and articles of war the same as if they *54 were in the army — and other marked characteristics of national homes readily suggested upon a consideration of their purpose, organization and management, will furnish a sufficient basis for making such national homes a class by themselves, and fixing upon one and one-half miles, instead of one mile outside of the boundary lines of their lands, as the limit within which it is made penal by the act to sell or give away at any place intoxicating liquors. Such a classification, in our judgment, would not be unjust or unreasonable, and would be founded upon adequate distinctions and differences between the two kinds of homes for disabled volunteer soldier® designated in the statute.
The statute operates uniformly upon the class of national homes for disabled volunteer soldiers. The constitution of Iowa provides, that all laws of a general nature shall have a uniform operation; and that the general assembly shall not grant to any citizen, or class of citizens, privileges or immunities, which, upon the same terms, shall not equally belong to all citizens. A statute of Iowa divided the railroads of the state into classes, according. to business, and established a maximum of rates for each of the classes. In Railroad Company v. Iowa, 94 U. S., 155, it was said by Waite, C. J.: “ The statute operates uniformly on each class, and this is all the constitution requires. This act does not grant to any railroad company privileges or immunities which, upon the same terms, do not equally belong to every other railroad company. Whenever a company comes into any class, it has all the ‘privileges and immunities’ that have been granted by the statute to any other company in that class.”
*55 It is argued in behalf of the plaintiff in error that the trial court erred in admitting parol evi-’ dence to prove that the National Home, at Dayton, was established and is recognized as a home for disabled volunteer soldiers of the United States, and is occupied by soldiers of that class ; and that the court further erred in permitting the treasurer and one of the board of managers of that institution to testify as to where the eastern line of the lands under the control of that National Home is located. We find no error in the admission of the testimony. The court below could properly take judicial notice of the act of April 13, 1867 (64 Ohio Laws, 149), ceding to the United States jurisdiction over certain lands and their appurtenances of the National Asylum for disabled volunteer soldiers within the state of Ohio (Brown v. State of Ohio, 11 Ohio, 280); and by such act the general assembly recognized the establishment and existence of that institution.
In determining the eastern line of the lands of the National Home, it was not a question of private boundary, involving title of a private right or estate, but rather of quasi public right. But on questions of public right, respecting the existence of a boundary between counties, parishes, or manors, the limits of a town or street, common reputation is admissible in evidence. And besides, where it is a question of private right, parol evidence is competent to prove possession of land within certain designated boundaries, and the person so proved to be in possession will prima facie, be presumed to be seized in fee.

Judgment affi/rmed.